## JACKSON, *ex dem.* VAN ALEN AND VAN ALEN, *against* AMBLER.

By an act of the legislature, passed the 8th of *June*, 1812, commissioners were appointed to settle disputes and controversies between persons claiming land under the patent to *De Bruyn*, and the possessors of land within that patent, who having made their award as directed by the act; it was held, that THE plaintiff in this suit having recovered a judgment against the defendant, in an action of ejectment, in order to revive the same, issued a *scire facias*, tested the 26th of *October*, 1814, returnable during the same term, against the defendant; to which the defendant appeared, and pleaded, that between the rendition of the judgment and the issuing the *scire facias* the lessors of the plaintiff died, leaving heirs at law entitled to the premises recovered, who, in conjunction with the plaintiff's attorney, on the 8th of *June*, 1812, with all persons claiming any in-

the award could not be invalidated as against law, because a previous decision of the court of errors had fixed the boundaries of the *De Bruyn* patent differently from the commissioners, this being within the scope of the authority given by the act; or, because it was not co-extensive with the submission, which empowered the commissioners to award upon other claims than those derived from the patent, as it did not appear that such other claims had been brought before them; that it was not uncertain in awarding lands to the parties, *according to their respective possessions*, without further defining them, this being capable of being reduced to certainty: that it was not uncertain in the statement of the bounds of the patent, no uncertainty in the lines run having been made affirmatively to appear, and the commissioners having viewed the land, and annexed a map of it to their award, which might be referred to to elucidate any obscurity; and that, although the commissioners had exceeded their powers, by awarding as to lands without the *De Bruyn* patent, yet, that this did not vitiate the whole award.

An award cannot be impeached on the ground that it is against law, especially, when the question has been referred to the arbitrators by an act of the legislature.

An award must decide on all the questions contained in the submission, otherwise it will be void; but then it must appear that the points decided upon were actually in controversy between the parties.

Where part of an award is void, by reason of the arbitrator having exceeded his power, it does not vitiate the residue.

Certainty to a common intent is sufficient in an award.

An award referring to *certain* extrinsic circumstances, is sufficiently certain.

Where a submission has been sanctioned by an act of the legislature, it cannot be drawn in question, unless the arbitrators have exceeded their powers, or executed them imperfectly.

ALBANY,
January, 1817.

JACKSON
V.
AMBLER.

terest or estate in a tract of land hereafter mentioned, of which the premises in question are parcel, united in an application to the legislature, praying them to pass the act hereafter mentioned: that the act was, accordingly, passed; that on the 9th of *April*, 1813, on further application of all the parties interested in the tract, another act was passed, as hereafter set forth: that the commissioners appointed by the first-mentioned act, accepted the appointment, and performed the duties required of them; that they caused the lands to be surveyed, and on the 4th of *June*, 1814, made and published their award under the hands and seals of two of them, and delivered the same to the parties; that the commissioners, from time to time, entered their determination in a book kept by them for that purpose, and on the 6th of *June*, 1814, caused the same to be filed in the office of the clerk of the county of *Columbia*, there to remain of record. The plea then sets forth the two acts of the legislature, and the book and award of the commissioners. The act of the 8th of *June*, 1812, was entitled " An act for settling disputes and controversies between persons claiming certain lands in the town of *Kinderhook*, under a patent granted to *John Hendrix De Bruyn*, and the possessors thereof." It will be necessary, for the full understanding of the case, and of the opinion of the court, to state the preamble and principal enacting clauses of this act, which were as follows:

" Whereas divers disputes and controversies have subsisted between the persons claiming a tract of land granted by patent to *John Hendrix De Bruyn*, in sixteen hundred and eighty-six, of the one part, and *Peter Cooper, Daniel Frier, Andrew Sergaman, John Niver*, jun., *Thomas Watson, Thomas F. Tobias, Reuben Bullock, John Goedemoet, Cornelius Watson, Marcus Niver, Michael Niver, Jacob Goedemoet*, and the heirs of *Henry Ham*, deceased, and others, who are in the possession of land in the town of *Kinderhook*, in the county of *Columbia*, of the other part, relative to the right and title to the said lands so possessed, and which are claimed by the said parties of the first part, by virtue of the said patent: And whereas the said disputes and controversies cannot be finally determined without a number of law suits attended with great delay and expense to the parties: And whereas divers of the parties are infants, and some under coverture, by means whereof it is difficult, if not impracticable, to have a determination of the disputes and controversies con-

clusive and binding, without the aid of the legislature : And whereas the agents and attorneys of the said parties have agreed to unite in an application to the legislature for an act appointing commissioners finally to determine the right and title of the said parties to the lands possessed by the parties of the second part, in the said town of *Kinderhook*, and claimed by the said parties of the first part, and all disputes and controversies relative to the same ; and that *Jacob Radcliff*, and *David B. Ogden*, of the city of *New-York*, and *Thomas Rudd*, of the town of *Poughkeepsie*, Esqrs., be the commissioners for that purpose ; And whereas the said agents have made their joint application, by petition to the legistature, the prayer of which it appears reasonable to grant : Therefore,

I. " *Be it enacted by the people of the state of New-York, represented in senate and assembly,* That *Jacob Radcliff, David B. Ogden,* and *Thomas Rudd,* be, and are hereby appointed commissioners to settle the said disputes and controversies.

II. " *And be it further enacted,* That it shall and may be lawful for the said commissioners to hear and examine all disputes and controversies between the said parties respecting the title to the said lands, the rights and remedies of the parties, and all claims made by them to the said land, or to any part thereof, by any or either of them, and, finally, to determine such disputes, controversies, and claims ; which determination shall be absolutely binding and conclusive, and shall, to all intents, constructions, and purposes whatsoever, absolutely vest the right, title, and interest of every part of the said lands in such person or persons, and for such estate or estates, and in such way and manner, as shall be named and specified in such determination ; and if such right or title of the parties of the first part, shall, by the said commissioners, be found to exist, then they shall ascertain and determine whether the remedy hath been barred or defeated by length of time, or other means whatsoever."

V. " *And be it further enacted,* That if the said commissioners shall determine the title to the said lands, or any part thereof, to be in the persons claiming under the said patent, then the said commissionsers shall view the lands, or so much thereof as they shall determine to belong to the said parties of the first part, and shall cause a survey to be made of the same, and of the parcels claimed by every person whose possession shall fall within such determination ; and also, that the said commissioners,

after such view and survey, and after taking all relative circum-stances into consideration, and after hearing the proofs and alle-gations of the parties, if any be offered, shall award and determine what shall be paid by the possessors to the proprietors for the same, and at what time and manner the same shall be payable.

VI. "*And be it further enacted*, That before the commis-sioners shall enter upon the duties of their office, the attorney for the parties of the first part shall deliver to the said commis-sioners the names of all such persons as claim to be proprietors of such lands as are possessed by the parties of the second part, within what is claimed to be the bounds of said patent; and the attorney for the parties of the second part shall also deliver to the said commissioners the names of all such persons as claim to be possessors, owners, or occupants of any lands so possess-ed within the disputed lines, and all persons whose names are so given shall be, and hereby are declared, parties to this act, as freely and effectually as if they were named herein.

VII. "*And be it further enacted*, That the moneys awarded by the commissioners aforesaid, shall be paid at the time, and in the manner by them directed, to such person or persons as shall be by them appointed; and upon payment of the amount of the moneys payable by the possessor to the proprietors, the possessor shall hold and be seised, and be deemed to hold and be seised, of an estate in fee simple in the said lands so pos-sessed by him as aforesaid, and the right and title of all per-sons claiming under the said patent, to be extinguished: but if it shall happen that the moneys shall remain due and unpaid, in whole or in part, at the end of the time appointed by the said award, then the proprietor or proprietors, or his or their agent, may proceed to a sale of the lands of the delinquent possessor, or any part thereof, at public auction, in the manner, and after the notice usual in the case of mortgages, with clause of sale, and such sale shall be a bar, both in law and equity, to the pos-sessor, and all who shall claim by, from, or under him or them: *Provided, nevertheless*, that if on such sale more money shall be made than is sufficient to satisfy the sum due, with reasonable costs, the sum remaining shall be paid to the possessor or de-linquent."

IX. "*And be it further enacted*, That all determinations, to be made by virtue of this act, shall be made within one year from the passing thereof; and that the commissioners shall, from

time to time, enter their determination in a book to be kept by them for that purpose, and after signing and sealing the same, such book shall be lodged in the office of the clerk of the county of *Columbia*, there to remain of record.

X. " *And be it further enacted*, That all and singular the trusts, powers, and authorities, hereby granted to the said commissioners, shall and may be executed by any two of the said commissioners."

XII. " *And be it further enacted*, That nothing in this act contained shall be taken or construed to impair any right or title to the said lands, which the said parties of the first part may set up, on the hearing before the said commissioners, other than that derived from the said patent; but they shall be at full liberty to avail themselves, on the said hearing, of all and every right, title, or claim which they may have to the said premises, or any part thereof, whether derived from the said patent, or otherwise."

By a subsequent act of the legislature, passed in 1813, the time for making the determination of the commissioners was extended to two years from the passing of the first act. The book of the commissioners stated their meeting; that the attorneys of the parties delivered to the commissioners the names of the claimants and possessors respectively, which are set forth in the book; that the commissioners, at the request of the parties, and in company with their respective attorneys and counsel, viewed the disputed premises, and examined the several lines set up by the parties, as the lines of the patent to *De Bruyn*, and examined the various landmarks shown by the parties; that on the 16th, 17th, 18th, and 20th of *September*, 1813, they heard and examined the disputes and controversies between the parties, respecting their title, rights, and remedies, and after the hearing, made and published their final order, award and determination, of and upon the premises.

The parts of the award material to the questions arising in this case, are as follows : *Secondly.* " We, the undersigned commissioners, do order, award, and determine, that the patent to *John Hendrix De Bruyn* shall be located as follows, to wit : beginning at *David's Hook*, upon the east side of *Hudson* river, thence running down along the east side of said *Hudson* river to the kill or creek called *France Peterse Clavers Saw kill*, to the place

where the said creek empties into *Hudson* river, which general course from the said *David's Hook* to the said saw kill, is south, nine degrees thirty minutes west, thence from said saw kill easterly along the line run by *John E. Van Allen*, as the south line of the said *De Bruyn's* patent, so far east as that a line parallel with the general course between the two river stations, to wit, a line north nine degrees thirty minutes, east, will strike the west margin of the small lake, to the eastward of *Suyer's* lake, called *Dickopper* lake, passing said west margin of said lake, on a continuation of said course, till you intersect the south line of the *Gardinier* patent, thence westerly along that line to *David's Hook* aforesaid.

Thirdly. "We do order, award, and determine, that all lands possessed by the said parties of the second part, or by any persons for or under them, lying east of the east line of the patent to *John Hendrix De Bruyn*, as above located and described, to wit, east of a line to be run from the south line of the *Gardinier* patent to the south line of *De Bruyn's* patent, as run by *John E. Van Allen*, on a course south nine degrees and thirty minutes, west, touching the west margin of *Dickopper* lake, shall remain to them, the said parties of the second part, their heirs and assigns, according to their respective possessions, for ever.

"And we, the said commissioners, having established the lines of the patent aforesaid, granted to *John Hendrix De Bruyn*, as aforesaid, hereby determine, that the title to part of the said lands was in persons claiming under said patent. We, the said commissioners, have viewed the lands so by us determined to belong to the said parties of the first part, and we have caused a survey to be made of the same by *David Brooks*, Esquire, by us appointed for that purpose, a map or diagram whereof is hereunto annexed, and we have caused survey, as aforesaid, to be made of the several parcels claimed by every person whose possession did fall within such our determination.

"And we, the said commissioners, after such view and survey, and after taking all relative circumstances into consideration, and after hearing the proofs and allegations of the parties, do, Fourthly, award, order and determine, &c. We do further award, order, and determine, that, as to the following piece or tract of land held and possessed by *Andrew Spickerman*,

bounded as follows : beginning at a point in our said east line, about twenty-five links north of the outlet of the *Dickopper* lake, being in the south line of the *Gardinier* patent, as claimed by them, and running thence north, nine degrees and thirty minutes, east, along our east line, fourteen chains ninty-seven links, to a stake in the north line of the *De Bruyn* patent, as claimed by them, thence along said north line, &c. And we do further award, order, and determine, that as to the following piece or tract of land held and possessed by *John Niver*, being part of the farm called the *Ambler* farm, and claimed heretofore by *Albert Pawling*, and possessed by *Ambler* under him, bounded, &c., containing thirty seven acres, exclusive of the post-road; that the said *John Niver* is the possessor of the said tract of land last above described, the title whereof is vested in the persons claiming under the patent aforesaid granted to *John Hendrix De Bruyn*. We do, therefore, award and determine, that there shall be paid by the said *John Niver*, to the said proprietors, the sum of thirty dollars per acre, on or before the first day of *November* next, which sum we order and direct to be paid to *Peter Van Schaack*, to be received by him for the proprietors, according to their respective shares or interest in the premises, and that from and after the payment of the sum aforesaid, he, the said *J. Niver*, shall hold and be seised of an estate, in fee simple, in the said lands so possessed by him, as aforesaid." The award was executed on the 4th of *June*, 1814, by *Theron Rudd*, and *David B. Ogden*, two of the commissioners.

The defendant then, in his plea, avers that as to the premises mentioned in the record, he had left the possession thereof, and that one *John Niver* had become the possessor thereof, and defended the same before the commissioners, and as to part of the premises called the *Ambler* farm, they adjudged that *Niver* was the possessor thereof, and ordered that he should pay, on or before the 1st of *November*, then next, the sum of thirty dollars per acre, to *Peter Van Schaack*, for the proprietors ; that as to the residue of the premises mentioned in the record, they awarded that the heirs of the lessors of the plaintiff had no estate or interest therein, but that the possessors, their heirs and assigns, should continue to hold and enjoy the same, according to their respective possessions, for ever; and that *Niver*, before the 1st of *November*, to wit, on the 1st of *October*, 1814, tendered to *Van Schaack* the sum ordered to be paid by him, which *Van*

*Schaack* refused to receive, and which he always has been, and still is, ready to pay.

To this plea there was a general demurrer, and joinder in demurrer.

The case was argued by *Van Buren* (attorney-general) and *Van Vechten*, for the plaintiff, and by *T. A. Emmet* and *E. Williams*, for the defendant; but the points and authorities are so fully discussed by the court, that it is thought unnecessary to state the arguments of the counsel.

SPENCER, J., delivered the opinion of the court. This case has been very ably and elaborately argued, and has received all the examination in our power to give it. It cannot, at this day, be controverted, that courts of justice are liberal in their construction of awards; many cases in which they were formerly held to be void as uncertain, or wanting mutuality, have, for a long series of years, been overruled; and we have no reason to regret the change. Arbitrations are domestic tribunals; the arbitrators are chosen by the parties themselves, and frequently mingle in their decisions their own knowledge of the matters in dispute. Generally speaking, their awards, though intelligible, are not drawn up with technical accuracy; their ends are mainly honest, and tend to terminate intricate disputes with very little expense to the parties : for all these reasons they ought to be viewed indulgently.

The commissioners, as the act under which they derive their appointment styles them, have been selected by the parties, and this selection has been sanctioned by the legislature; the reasons which induced this are stated in the preamble to the act. Divers disputes and controversies had subsisted between the persons claiming a tract of land granted to *John Hendrix De Bruyn*, in 1686, of the one part, and others who are named in the preamble, and who were in possession of land in the town of *Kinderhook*, of the other part, *relative to the right and title to the said lands so possessed, and which were claimed by the said parties of the first part, by virtue of said patent*, which said disputes and controversies could not be finally determined without a number of law suits, attended with great delay and expense to the parties. It then states that divers of the parties were infants, and some under coverture, by means whereof it was

difficult, if not impracticable, to have a determination of the disputes and controversies conclusive and binding without the aid of the legislature. It then sets forth that they had agreed to unite in an application to the legislature for an act appoint-ing commissioners finally to determine *the right and title* of the said parties to the lands possessed by the parties of the second part, and claimed by the parties of the first part, and all dis-putes and controversies relative to the same.

On this state of the case, the legislature passed the act, drawn up by the parties, vesting the commissioners named by them with powers which will be adverted to; the commissioners have heard the parties, and two of them have united in a determina-tion, the validity of which is drawn in question by the demurrer to the defendant's plea.

The three general objections to the decision of the commis-sioners are,

1st. That they have not decided according to law:

2d. That their decision is not co-extensive with the subject matter submitted:

3d. That it is uncertain, and not final.

The first objection has been urged, in reference to the deci-sion of the court for the correction of errors, upon the extent and boundaries of *De Bruyn's* patent. It was, probably, deci-ded in that case (8 *Johns. Rep.* 495.) that a line along the west branch of the fish lake in its whole extent, was the eastern boundary of the patent; I say, probably, because the manner of collecting the decisions in that court, unfortunately, in almost every case, where several opinions are given, leave it doubtful what is the decision in any given case. Admitting it, however, to have been so decided, that decision was only applicable to the facts then before the court. It was the law of that case, and could not conclude the party upon a different state of facts. It is manifest, from the preamble of the act already stated, as well as from its body, that the parties to the act intended to refer the question, as to the extent and boundaries of the patent, to the final decision of the commissioners. The second section of the act declares it to be lawful for the commissioners to hear and examine all disputes and controversies between the said parties to the title to the said lands, the rights and remedies of the parties, and all claims made by them to said land, or to any part thereof, by any or either of them, and finally to determine

such disputes, controversies, and claims; and that their deter-
mination shall be absolutely binding, and shall, to all intents,
constructions. and purposes, whatsoever, vest the right, title, and
interest of every part of said lands in such person or persons,
and for such estate or estates, and in such way or manner as
shall be named or specified in such determination.

The sixth section is, if possible, more explicit; it enacts, that
before the commissioners shall enter upon the duties of their
office, the attorney for the parties of the first part, shall deliver
to the commissioners, the names of all such persons as claim
to be proprietors of such lands as are possessed by the said
parties of the second part, *within what is claimed to be the bounds
of said patent;* and the attorney for the parties of the second
part shall also deliver to the said commissioners the names of
all such persons as claim to be possessors, owners, or occupants
of any lands so possessed *within the disputed lines.*

There was nothing in controversy between the parties but
the boundaries of *De Bruyn's* patent. It was conceded by the
preamble to the act, as well as its provisions, that the parties of
the first part were legitimate claimants of *De Bruyn's* patent;
no deduction of title was to be made out; the names were to be
furnished to the commissioners, of those who claimed to be pro-
prietors on the one side, and on the other of those who claimed
to be possessors, owners, or occupants of lands within the dis-
puted lines; and the whole determination proceeds on the
ground that nothing was in dispute but the boundaries of the
patent, and whether the remedy was lost in those cases where
the possessions fell within the line established by the commis-
sioners.

It is a novel objection that an award is against law, where it
decides upon a complicated question of boundary, and where
that very question was the principal matter submitted.

Where an arbitrament takes place, by the mere act of the
parties, it cannot be made an objection to an award, that it is
against law. (*Kyd,* 185. 237, 238., and 3 *Caines' Rep.* 167.
*Shepard* v. *Watrous.*) In *Cranston and another* v. *Executors of
Kenny,* (9 *Johns. Rep.* 212.,) a motion was made to set aside
an award, where the submission was, by the act of the parties,
without any rule or order of the court, for a mistake in law; and,
on a review of all the cases, we denied the motion.

If, then, we cannot notice the objection when the submission

ALBANY,
January, 1817.

JACKSON
v.
AMBLER.

is by the act of the parties, much less can we do it when to the act of the parties is superadded an act of the legislature, and the very point submitted is the question of law, in reference to which, it is alleged, the decision is against law.

The second objection, that the award is not co-extensive with the subject matter submitted, is founded on this, that by the 12th section of the act, " the parties of the first part *were to be at full liberty to avail themselves on the hearing of all and every right, title, or claim, which they might have to the said premises, or any part thereof, whether derived from the said patent, or otherwise ;* and that it does not appear, by the award, that such rights have been heard and adjudicated upon, and that if such rights do exist, the parties of the first part are hereafter precluded, by the award, from setting them up. To bring this case within that of *Randall* v. *Randall*, (7 *East*, 81.,) it has been insisted, that an *ita quod* clause is to be inferred from the act of the legislature, so as to render it a part of the submission, that the commissioners should, at all events, decide upon the rights of the parties of the first part, under the said 12th section. The case referred to does decide that where there is a reference of two distinct matters of difference, and the arbitrator omits to decide one of such distinct matters, the whole award is vitiated. But it expressly appears in that case, that the arbitrators had not decided upon one of the matters specifically submitted.

This objection is untenable. I admit the law to be " that the award must comprehend every thing submitted, and must not be of parcel only." Upon this rule *Kyd* (172) observes (and he is supported by the cases he refers to) that it must be understood with a considerable degree of limitation ; for though the words of the submission be more comprehensive than those of the award, yet, if it do not appear that any thing else was in dispute between the parties beside what is comprehended in the award, the award will be good ; as if the submission be of all actions, real and personal, and the award be only of actions personal, it shall be presumed that no actions real were depending between the parties. So, he says, it will be sufficient if the thing awarded necessarily includes the other things mentioned in the submission, and this he illustrates by putting a case.

In the first place, it was not submitted absolutely to the commissioners, to decide upon the rights of the parties of the first part, independently of their claim under the patent to *De.*

*Bruyn.* Their claim under the patent was the primary object of the submission; and the 12th section of the act, without directly asserting that they had any other claim, was inserted for the purpose of giving them a right to urge claims otherwise acquired or existing. They were to be " at full liberty to avail themselves on the hearing" of such other claims ; whether the commissioners took such other claims into consideration or not, was to depend upon the fact, whether they were brought forward or not. Unless they were brought forward, they were not to be decided upon. It does not appear, then, that any thing was in dispute between the parties in regard to any such claims, beside what is comprehended in the award ; and, then, upon one of the distinctions laid down by *Kyd,* the award is good. But again; the award necessarily includes every such claim, and decides upon it. (1.) It is an award upon the premises, and this involves every thing submitted. (2.) It determines and fixes the location of *De Bruyn's* patent. (3.) It decides that all lands, possessed by the parties of the second part, east of the east line of the patent, as ascertained by them, shall remain to them, the parties of the second part, their heirs and assigns, according to their respective possessions for ever. (4.) It decides that the title to part of the lands included within *De Bruyn's* patent, as established and located by them, was in persons claiming under said patent.

The commissioners then state that they have viewed the lands so by them determined to belong to the parties of the first part, and have caused a survey to be made of the same by *David Brooks,* by them appointed for that purpose, a map or diagram whereof they annex to their report ; and that they had caused a survey, as aforesaid, to be made of the several parcels claimed by every person whose possession fell within such their determination, and then they proceed, (5th.) to award, in some cases, that though the parties of the first part had right, their remedy was lost; and as to such they award in favour of the possessors ; and where the right and remedy existed in the parties of the first part, they award and fix the compensation to be paid agreeably to the act.

From this statement, it is manifest, that if the parties of the first part brought forward any claims under the right reserved to them in the 12th section of the act, such claims have necessarily been decided upon ; and if no such claims were brought forward, then there is no dispute in relation to them.

Under the third head, that the award is uncertain, and not final, three exceptions have been taken, which will be considered in their order:

1st. It is contended, that the award is uncertain in this, that it awards the land possessed by the parties of the second part, east of the east line of the patent, as located by the commissioners to the parties of the second part, *according to their respective possessions*, for ever.

The particular uncertainty is supposed to consist in not defining the extent of their possessions, or the nature or quality of them.

I am of opinion, that the award, in this respect, is an excess of power, on the part of the commissioners, and, therefore, void. The recital, and the whole provisions of the act, relate to the claim by the parties of the first part, under *De Bruyn's* patent, and as respects the parties of the second part, to the possessory right of the parties of the second part, as to what was thus claimed to be within the boundaries of that patent. The first great question to be decided by the commissioners was, as to the boundaries and extent of that patent. The second was, whether any of the possessors had acquired a right to hold their lands, admitting them to be within those boundaries; and the next, admitting the possessions to be included by the patent, and that the remedy of the parties of the first part was not barred, was, what price should be paid for the lands thus circumstanced? We no where find an intention expressed in the act, to give the commissioners cognizance of any question as to the title of lands without the boundaries of the patent of *De Bruyn*. If I am right in this construction, it does not affect the decision of the commissioners, as to the extent of the patent or as to the lands included within it, upon the maxim that *utile per inutile non vitiatur;* and in this point of view, the plaintiff cannot complain of the award for this excess of power, for it does not appear that he is injured or affected by it; and if it did affect him, it being void, it works no injury to him.

Admitting, however, that the award is not void, on the ground that the commissioners have exceeded their powers, and that the award, in this respect, is to be deemed an exercise of the power given to the commissioners under the 12th section of the act, I am of the opinion that the award is certain to a common intent, and that is sufficient. In *Purdy* v. *Delavan*, (1 *Caines'*

*Rep.* 314, 315.) Justices *Livingston* and *Kent* lay it down that certainty to a common intent, consistent with fair and probable presumption, is all that is required, under the rule that an award must be certain and final. There can be no doubt, when the act and award are duly considered, that the commissioners meant, in awarding the lands east of the east line of *De Bruyn's* patent, to the parties of the second part, *according to their respective possessions*, the actual possessions of those persons ; and it was truly observed on the argument, that a deed conveying land as actually possessed by a person, would enure to the benefit of the grantee, as fully as if it described the lands by metes and bounds. (*Viner. Ab. Grant. Co. Litt.* 4. 6.) An actual possession, *quasi pedis possessio,* is susceptible of clear and definite proof, and no lands can be conveyed by any possible mode of expression, dispensing with the necessity of parol proof to locate it. We cannot require more certainty of description in an award than what the law requires in describing land conveyed by deed; nor are we to intend, for the purpose of avoiding this award, that there is any uncertainty in these possessions. They may, for aught we know, be included within the most definite and permanent enclosures ; and, if necessary to support the award, we ought to intend that to be the case.

2. It is insisted, that there is a fatal uncertainty in settling the exterior boundaries of *De Bruyn's* patent.

The award determines the location of that patent to be as follows : " Beginning at *David's Hook,* upon the east side of the *Hudson* river, then running down along the east side of said *Hudson* river, to the kill or creek called *France Peterse Clavers* saw kill, to the place where the said creek empties into *Hudson* river ; which general course, from the said *David's Hook* to the said saw kill is south nine degrees and thirty minutes west, thence from said saw kill easterly, along the line run by *John E. Van Alen,* as the south line of said *De Bruyn's* patent, so far east as that a line parallel with the general course between the two river stations, to wit, a line north nine degrees, thirty minutes east, will strike the west margin of the small lake to the eastward of *Suyer's* lake, called *Dickopper* lake, passing said west margin of said lake, on a continuation of said course, *till you intersect the south line of the Gardinier patent,* thence westerly along that line to *David's Hook* aforesaid."

It has been argued that the line run by *John E. Van Alen,*

and the south line of the *Gardinier* patent are uncertain. This we cannot say; for aught that appears, both their lines may be as well known, and as perfectly certain, as any lines ever run. There may be marked lines at every rod's distance, or the most durable monuments. It ought to have appeared affirmatively, that there were no such lines, or that they were indefinite and vague. We are bound to notice, too, that the commissioners have viewed the lands, so determined by them to belong to the parties of the first part, and caused a survey to be made of the same, and that they have annexed to their proceedings a map or diagram thereof. This map being thus referred to, may be taken into consideration as part of the description of the boundaries, and by way of elucidating any thing obscure in it. (*Bac. Abr.* tit. *Grant. H.* 2.) If a grant be made of such liberties as such a town enjoys, the grant is good, being capable of being reduced to certainty; for when the act of disposal relates to another thing, that thing, in a manner, becomes part of the disposition, and the standard referred to being certain, the grant, by relation thereto, becomes certain. If so, then the map or diagram renders these two lines perfectly and mathematically certain. The courses, according to the compass, are marked out upon it from the stations on the river.

But, it is contended that it appears by the award itself that the line of the *Gardinier* patent is uncertain in this, that in describing the land held and possessed by *Andrew Spickerman*, they begin at a point in the commissioners' east line, which is described by them as *being in the south line of the Gardinier patent, as claimed by them;*" and running thence north nine degrees, thirty minutes east, along their east line fourteen chains ninety-seven links, to a stake in the north line of the *De Bruyn* patent, as claimed by them, &c. Thus, it is urged, admitting that there are two lines of the *Gardinier* patent, and that one of them is south of the line of the *Gardinier* patent mentioned by the commissioners in fixing the exterior lines of the patent.

This objection has more plausibility than any which has been made, but I think it equally destitute of solidity. The commissioners, in establishing the outlines of the *De Bruyn* patent, as we have already seen, recognise the south line of the *Gardinier* patent, and make that the north line of *De Bruyn's*. In *Spickerman's* case, they recognise one of the stations of the land awarded to him to be "in the south line of the *Gardinier* patent,

*as claimed by them;*" thus evidently distinguishing between the real south line of the *Gardinier* patent, and one to which they laid claim. Without involving any absurdity, there may be these two lines, and if there be, it is plain that the commissioners have considered the most northerly of the two as the true line. It is to be observed, that the authority and power of the commissioners did not extend to the settlement of *De Bruyn's* patent lines, so as to affect or conclude the rights of other persons holding and claiming under adjoining patents. They had no concern with the clashing claims of any other patentees. If the exterior lines established by the commissioners were so definitely specified, either by the terms they make use of in the award itself, or by reference to the map, as to fix the rights of the parties, then it seems to me, that we must have the most demonstrative proof that they have afterwards set afloat that location, in designating the possessions of the persons which fell within the lines they established. The point itself charges the commissioners with glaring absurdity. The *Gardinier* patent, as I have already observed, may have had two lines; the one a real and true line, to which all the possessions under it conformed; the other to which they had set up a claim, in contradistinction to the true and real line; and they are thus spoken of and referred to by the commissioners. The mention, then, of this claimed line of the *Gardinier* patent, cannot, and ought not to be understood as in the least affecting the preceding location of the patent.

Another difficulty, equally unsolid, has been started. It is urged that the line intended as the north line of *De Bruyn's* patent, instead of being designated as the south line of the *Gardinier* patent, which the commissioners recognise as the northern boundary of the *De Bruyn* patent, is inscribed on the map " as the north line of *De Bruyn's* patent, as laid down by *John E. Van Alen.*" Thus, it is contended, creating an uncertainty in the northern boundary of the patent. When the commissioners state, in their award, that they have caused a survey to be made, and have annexed a diagram to their award, they assert, as strongly as possible, that the lines they lay down correspond with the award; and we must intend that *Van Alen's* line thus marked on the map, is the south line of the *Gardinier* patent.

It was suggested on the argument, that this arbitrament, having been sanctioned by an act of the legislature, the court

could not rightfully draw in question the decision of the commissioners. I accede to this, in so far as the commissioners have executed the trust confided to them; but had it appeared that they exceeded their powers, or imperfectly executed them, we should have been bound to deny to their decision any valid effect. In deciding the questions raised, we ought to give a fair and liberal interpretation to the award; we can take no notice of the original merits of the case; these the parties have seen fit to submit to these commissioners, and their determination must be final and conclusive, unless substantial grounds are shown to invalidate it; and we think there are none such. The defendant, therefore, must have judgment on the demurrer.

Judgment for the defendant.