Judge Carr
delivered the opinion of the Court.*
The appellee brought an action of slander against the appellant. Pending the action, the parties in person came into Court, and agreed to submit “all matters in difference between them in this suit, to the final determination of Al« *277 len Jeter and John Baldwin, and such umpire as they shall choose, and that their award thereupon, shall be made the judgment of the Court; and that the said arbitrators and their umpire may proceed to make their award ex parte,” on giving notice, &c.
The arbitrators, (as the bill of exceptions states) regularly chose Henry Haskew their umpire; at what time, does not appear. The arbitrators and thé umpire proceeded together to hear the cause, each signing their proceedings prior to the award; and finally returned into Court the following award: “On hearing the evidence and arguments of counsel on both sides of the question, we, as referees, are of opinion, that the defendant Bison, pay unto the plaintiff Berry, the sum of one thousand dollars.” Signed, A. Jeter, John Baldwin, Henry Haskew.
It has been objected to this award, 1. That the submission was to Jeter and Baldwin, and such umpire as they may choose; and the award is signed by Jeter, Baldwin, and Haskew, without any statement by the arbitrators, that they had chosen Haskew umpire; so that he may be a stranger, which would vitiate the award. 2. Supposing Has-hew, the umpire, it is contended, that he could not act, till after the disagreement of the arbitrators.
With respect to the first objection, I think there can be no doubt, that we must take Haskew as regularly appointed umpire. I see no necessity, either in reason or authority, to confine the evidence of the appointment to a statement in writing made and returned by the arbitrators; and the bill of exceptions states, that the fact was proved in Court. But take him for a stranger, who had joined the arbitrators in making the award. There is authority, both ancient and modern, that this would not vitiate. Beck v. Sargent, 4 Taunt. 232.
Supposing Haskew an umpire, we will consider, whether a joint award by the arbitrators and the umpire, be good? In Bulstr. Bep. 184, the case was this: A submission to four persons, and the umpirage of another; and the *278 assumpsit was mutually to stand unto, and perform, the older of them five. The four persons, and the fifth as umpire, did make the award; and the question was, whether it was made according to the submission ? Williams, Justice, said, “that the award was well made, and pursuing the submission; but otherwise it had been, if in the submission, they had been divided. As if it had been in this manner; that if the four could not agree in their award, that then the submission be to the umpirage of the fifth man; then these five could not all of them join in making this award. But the submission being here to four, and to the umpirage of a fifth, they all five may well join in their award; and so the award here made, by them all five, is clearly good and well made according to the submission; and the same award ought to be performed. The whole Court agreed with him herein.” The case before the Court in Bulstrode, was exactly that which is before us. There, it was a submission to four, and the umpirage of another. Here, it is a submission to two, and their umpire; and their award to be the judgment of the Court.
It will be observed, that Justice Williams, not satisfied with deciding the case before him, went on to say, that if the submission had been to the four, and if they could not agree, then to the umpirage of a fifth man; they could not have joined in their award. This was an obiter dictum merely.
Soulsby v. Hodgson, 3 Burr. 1474. That case was this: A submission to arbitrators, and if they did not agree in a limited time, they were to choose an umpire. They disagreed, chose an umpire, and joined him in the award. The question was, whether the umpirage.was duly made, according to the powers given to the umpire, or was vitiated and rendered void by the arbitrators joining in it. Wallace, for the defendant, cited the case from Bulstrode, “where, (as he says,) Williams, Justice, says such an umpirage would be bad.” ' The Court were unanimous and clear, that this was the umpirage of the umpire only. He was at liberty to take what advice, or opinion, or assessors, *279 he pleased. The Court add: “ The case which was cited at the bar, is certainly a mistake, an error of the reporter. No such thing could be said, as is there reported; at least there could be no determination founded upon it. It is a distinction in toords, without any real difference in sense and meaning ” It is very clear, that this case did not intend to over-rule the decision in Bulstrode; for it takes even stronger ground than is there assumed. But, it meant to shew the absurdity of the distinction attempted to be taken, between the case actually before the Court, and the case supposed in the dictum of Williams. It is a little curious, that Kyd, in his Treatise on Awards, has taken the dictum for the decision of the Court, and the actual decision for the dictum; and refers to this case in Burrow, as over ruling, in effect, the case in Bulstrode. Kyd on tdw, 105.
In Underhill v. Van Cortlandt, 2 Johns. Ch. Rep. 339, the submission was to two persons, to value some mills, and other works; and if they could not agree, to choose an umpire. They chose the umpire before they went into the evidence, and all acted together. They were some days engaged, with the parties and witnesses before them; and finally, all three signed and sealed the award. One objection taken to it, was, that L. (the third man,) was cliosen to assist the other two, and not as an umpire to decide, independently by himself, as he ought to have been, according to the intention of the covenant. In reply to this objection, the Chancellor considers that all parties having acquiesced in this appointment, and acted under it without objection, must be deemed to have concluded themselves, by their own free consent and agency, from setting up this objection to defeat the award. This reasoning applies strongly to our case. The umpire acted with the others from the first. The parties were before them by-counsel; and their proceedings had all the form and publicity of a Court of Record. Exceptions are filed to their opinions on other points. Yet we find no objection made, *280 no exception taken, to the arbitrators and the umpire act* ing together. Would it not be unreasonable and unjust, to suffer the defendant, who had lain back, and taken the chance of a decision in his favor, to come forward as soon as he finds it against him, and' urge an objection, open to him from the first; and which, in good faith, he ought to have taken (if at all) at the earliest stage of the business ? To return to the New York case. The Chancellor further lays it down, that if the umpire ought to have been chosen, and to have acted strictly as an umpire, still the act is valid; for the association of the other two appraisers with him, in viewing the premises, in consultation, and in the award, does not vitiate the award by him as umpire; and he states it as settled by Soulsby v. Hodgson, (before cited) that if the arbitrators join in the umpirage, it does not vitiate it.
Lord Jllvanley also, in Emery v. Ware, 5 Ves. 848, says, “ An arbitrator may make use of the judgment of another, on whom he can depend, and the valuation of that person is his, if he chooses to adopt it.” •
I know that the decree of Chancellor Kent, in Underhill v. Van Cortlandt, was reversed by the Court of Error, 17 Johns. Rep. 405; but the reversal was wholly on other points; and Spencer, C. J, (with whom the majority of the Court agreed,) says, “The objection to the choice of an umpire, (if it were true, that the two persons first chosen had not differed in opinion,) is equally untenable. It is well settled, that arbitrators may nominate an umpire, before they proceed to the consideration of the subject submitted; and it is the fairest way of choosing an umpire.” 2 Term. Rep. 644.
The latest case I have examined on this subject, is Beck v. Sargent, 4 Taunt. 232. That was a submission, “so that the two arbitrators should make their award, before or on the 21st of June; but, if no award made, before or on that day, then the parties should observe the award of an umpire, to be chosen by the arbitrators, so that such umpirage be made before the 28th of June.” The arbi *281 irators did not make their award, or choose an umpire, be-fore or on the 21st of June; but chose one before the 28th; and the umpire, together with the arbitrators, before the 28th, made their joint award in the following terms: “ We the undersigned, arbitrators and umpire, do award, &c.” One of the objections taken to this award, was, “ that the award of three is necessarily the award of a majority of them, who may happen to consist of the two arbitrators, in opposition to the umpire, and so no award of his; and at all events, it is not the award of the umpire alone.” On this point, Mansfield, C. J observes, “What the arbitrators do, in making the award, is nothing. The award is, in law, the award of the umpire alone. It is no more than if mere strangers had joined in the award, which could not vitiate.” Heath, J. says, “It has been decided in very old cases, that the circumstance of another joining with the arbitrators in making an award, does not vitiate.”
Thus, in the case before us, whether we consider this as the award of the arbitrators, joining Haskew with them, either as umpire, or as a stranger; or, if we say that it is the umpirage of Haskew, who has taken the arbitrators as his counsellors or assessors; quacvnque via data, the award is good; and the judgment of the Court below must be affirmed.

 The President and Judge Cabiei absent.