# WHEELING.

## ROGERS *et al* v. CORROTHERS.

Submitted June 13, 1885.—Decided July 3, 1885.

1. An umpire may be selected either before or after a disagreement between the arbitrators. (p. 245.)

2. Where a submission "authorizes and directs the arbitrators to select an umpire," it means, if there should be disagreement, the umpire shall settle it. But if under such submission there is no disagreement, and no umpire is chosen, the award will not be bad, because the arbitrators did not choose an umpire. (p. 245.)

3. A statutory award is complete, when it is signed and published and ready to be returned to court; and when it is so made, the authority of the arbitrators is gone, and they are *functus officio*. (p. 245.)

4. When an award is made, the arbitrators can not change it, and though they do attempt to change it, effect may be given to it as it originally was. (p. 246.)

5. A party, who himself has been the only cause of misbehavior on the part of the arbitrators or either of them, can not be heard to complain of such misbehavior. (p. 246.)

6. Technical precision and certainty are never necessary in an award. If it be expressed in such language, as plain men acquainted with the subject-matter can understand it, that is enough. (p. 246.)

7. If an award settling a corner and lines between two tracts of land shows that two points one in each of two lines are ascertained, they will be regarded as fixed and certain, unless the record shows, that they are uncertain; and if the award gives directions to ascertain where the corner, which must settle the dispute, is located by the award, and in such a manner that any competent surveyor could from such award find the corner and lines, the award is certain. (p. 248.)

8. Where arbitrators have made and published their award, and at the instance of one of the parties they change the award, and the award so changed is returned to court, and the other party moves to have the changed award entered up as the judgment of the court, and it is so entered up against the protest of the party at whose instance the original award was changed, by an addition thereto, whereby it was made more favorable to him, said party is not prejudiced by the entering up of the second or changed award instead of the first. (p. 249.)

A statement of the facts of the case will be found in the opinion of the Court.

*Martin & Woods* for plaintiffs in error.

*H. J. Snively* for defendant in error.

JOHNSON, PRESIDENT:

This is a writ of error to a judgment of the circuit court of Taylor county, entering up an award of arbitrators as the judgment of the court. The submission is as follows :

"This writing witnesseth an agreement mutually made and entered into this November 17, 1881, by and between Thomas Rogers, Jacob Peters and Amaziah P. Boyce, of the one part, and Samuel Corrothers, of the other part, all of the county of Taylor, West Virginia, wherein and whereby the above named parties submit to arbitration all matters growing out of and concerning a certain dispute as to which is the proper line between their lands lying upon the water of White Day creek, in said Taylor county. The land which the said Rogers represents has been conveyed to Jacob S. Peters, who now owns it, save a portion conveyed to Amaziah P. Boyce, and which was formerly known as the Matthews tract. That

which the said Corrothers represents was purchased by Andrew Corrothers from Thomas Haymond, and now belongs to him, the said Samuel Corrothers. The object of this sub-. mission is to settle the proper lines and boundaries between the said lands completely, and to settle all damages arising out of the dispute concerning the said boundaries, and to settle and fix the several corners between the said land. The parties aforesaid mutually agree to submit the said matters in controversy and to be settled by this submission to the following named parties, to-wit, to Marmaduke H. Dent and Leonidas S. Johnson, who are authorized and directed to choose an umpire. The said arbitrators shall hear all testimony legally submitted by each party to the controversy, and be the judges of the law and the facts in the case. A notice from the arbitrators of thirty days shall be necessary as to the time and place of arbitrament before the said arbitrators shall proceed to hear testimony.

"Each party further hereby agrees that this submission may be entered of record in the circuit court of Taylor county, and that the award of the said arbitrators concerning the matters above mentioned shall be made the judgment of the circuit court of Taylor county, and that the said award shall be returned to the said court accordingly.

"Witness our hands and seals this November 17, 1881.

"Thomas Rogers,    [seal.]
"Amaziah P. Boyce,  [seal.]
"J. S. Peters,      [seal.]
"Sam'l Corrothers,  [seal.]

"Attest all of the above signatures:

"H. J. Snively."

The award is as follows:

"We, the undersigned arbitrators, to whom was referred the matters of dispute as to the division lines between the lands of Samuel Corrothers and the lands now owned by J. S. Peters and Amaziah P. Boyce and formerly owned by Thomas Rogers, by written contract signed by all of said parties on November 17, 1881, having been first duly sworn for the purpose, and having heard and considered the evidence and papers produced by any and all of the said parties, after thirty days' notice, as required by the article of submission,

do make, publish and declare our award to be as follows, to-wit: That the true lines between the said lands in dispute are and shall remain—1st, a part of a four hundred pole line of said Samuel Corrothers' survey, which begins where once stood a red oak corner, now gone, and ends at pointers; 2d, a part of a 260 pole line of same survey, which begins at a double poplar, corner to Samuel Corrothers' lands, and ends at said red oak corner.

"And we further award that the point where said red oak stood is and shall remain a corner between said lands, and that the same is and shall remain situated exactly 400 poles from said pointers and 260 poles from said double poplar corner, provided, however, that when said lines are surveyed said point shall not fall further on the Corrothers' side of said lines than said Rogers and Peters claims the same to be, and in that case our award is that the said point where the said Rogers and Peters claim the said red oak to have stood, shall be the corner between said lands, and the lines shall be straight lines from said point to said double poplar corner and said pointers, respectively.

"And we further award that in locating said point said parties shall be governed by the courses of Samuel Corrother's title papers, corrected so as to locate said corner at the point aforesaid, and said lines shall not be varied from a direct or straight course from said corners to the angle or point aforesaid by reason of any marked trees that may be found along or in the vicinity of said lines. And it appearing to us that said parties have been equally neglectful about preserving said red oak corner, and have destroyed and allowed the same to be destroyed and the traces thereof to become obliterated, we therefore award that said Corrothers shall pay one-half the costs of this arbitration and that said Peters and Rogers shall pay the other half of said costs.

"Given under our hands and seals May 18, 1882.

"L. S. JOHNSON,     [ SEAL. ]
"M. H. DENT,       [ SEAL. ]"

"Clerk's endorsement on foregoing award:

"Filed October 23, 1882.

"Teste:          JNO. S. S. HERR,
    "*Clerk of the Circuit Court of Taylor Co., W. Va.*"

On November 16, 1882, the arbitrators having returned their award, it was on motion of Thomas Rogers ordered, that Jacob S. Peters, Amaziah P. Boyce and Samuel Corrothers be summoned to appear at said court on the fifth day of the next term thereof and show cause, if any, why the said award should not be entered up as the judgment of the court.

On November 21 the plaintiff, Rogers, moved to have said award entered up as the judgment of the court, and the defendant, Corrothers, resisted said motion, and the defendants Peters and Rogers offered no objections, and, the evidence and arguments having been heard, the court entered up said award as the judgment of the court, to which judgment the defendant, Corrothers, excepted; and the bill of exceptions saved certifies all the evidence heard by the court on said motion, which is in substance as follows : The submission and the award on behalf of the plaintiff; the evidence of Corrothers that some time within a month after May 18, 1882, Marmaduke H. Dent gave witness as the award of himself and L. S. Johnson a paper-writing signed by said Dent and Johnson, which is as follows :

" We, the undersigned arbitrators, to whom was referred the matters of dispute as to the division lines between the lands of Samuel Corrothers and the lands now owned by J. S. Peters and Amaziah P. Boyce, and formerly owned by Thomas Rogers, by written contract signed by all of said parties on November 17, 1881, having been first duly sworn for the purpose, and having heard and considered the evidence and papers produced by any and all of said parties, after thirty days' notice to them as required by the article of submission, do make, publish and declare our award to be as follows, to-wit :

"That the true lines between the said lands in dispute are and shall remain—1st, a part of a 400 pole line of said Samuel Corrothers' survey which begins where once stood a red oak corner, now gone, and ends at dogwood pointers; 2d, a part of a 260 pole line of same survey which begins at a double poplar, corner to Samuel Corrothers, and ends at said red oak corner.

"And we further award that the point where said red oak stood is and shall remain a corner between said lands, and

that the same is and shall remain situated exactly 400 poles from said dogwood pointers and 260 poles from said double poplar corner.

"And we further award that in locating said point said parties shall be governed by the courses of Samuel Corrothers' title papers, corrected so as to locate said corner at the point aforesaid exactly in a straight line 400 poles from said dogwood pointers and 260 poles from said double poplar corner, and said lines shall not be varied from a direct or straight course from said corners to the angle or point aforesaid by reason of any marked trees that may be found along or in the vicinity of said lines.

"And it appearing to us that said parties have been equally neglectful about preserving said red-oak corner, and have destroyed and allowed the same to be destroyed and the traces thereof to become obliterated, we therefore award that said Corrothers shall pay one-half the costs of this arbitration and that said Peters and Rogers shall pay the other half of said costs.

"Given under our hands and seals this 18th day of May, 1882.

"L. S. JOHNSON, [SEAL.]
"M. H. DENT.   [SEAL.]"

This paper witness says was given to him a short time after it bears date by said Dent as the genuine award of himself and Johnson.

John S. S. Herr testified, that he was acquainted with the handwriting of Dent and Johnson; that the paper, of which witness Corrothers had spoken, bears the genuine signatures of said Dent and Johnson.

Frank Woods was sworn and stated that a copy of the award filed in the clerk's office was handed to him as Corrother's attorney by M. H. Dent on October 29, 1882.

The plaintiff then introduced Dent, who said, he was one of the arbitrators. Corrothers asked witness to give him some idea of what the award would be. The copy, to which reference was made, was handed to them, the parties, shortly after May 18, 1882, so that they could raise any exceptions, and not as the final award. The final award was returned to court. The paper filed by the arbitrators on October 23

1882, in the clerk's office is the true judgment of the arbitrators and is their award.   Corrothers brought the copy given to him shortly after May 18, 1882, back to witness, and also a plat made by Mr. F. Woods, and showed witness, that the award was not what the arbitrators intended it should be, and that it would be unjust to Corrothers.   In making up their award they modified it to protect Mr. Corrothers.

L. S. Johnson was also sworn as a witness.   He said he was one of the arbitrators; that the arbitrators met, and came to a conclusion after deliberating together ; Dent drew up the conclusion in the shape of an award, and after a good deal of solicitation from Rogers and Corrothers they gave the result of their conclusion.   Witness did not look upon it as a finality between the parties, until the award was fully made out and returned to the clerk's office of the court.   Mr. Dent suggested some changes in the first arrangement, to which witness consented, and they drew up an award and signed it, and witness filed it in the clerk's office as their final award. The one so filed is their award.

Corrothers was examined in rebuttal and said: "I never heard anything to the contrary but what that paper marked 'O' (the first award) was the genuine award."   On cross-examination he said: "I did go to Dent a good many times and insisted that the award he gave me, I mean the paper marked 'O,' was wrong and wouldn't work.   I wanted to know what the award would be.   I did exhibit to Mr. Dent the plat Mr. Frank Woods made and pointed out the injustice the award marked 'O' would be to me.   I told Dent it was doing me a great injury and would take more land than Peters claimed.   This award 'O' was understood as a final award.   The value of the amount in controversy in this case was two hundred dollars."

To the judgment of the court entering up the award as a judgment the defendant, Carrothers, obtained a writ of error.

It is assigned as error, that the arbitrators failed to choose an umpire according to the requisites of the submission.   The submission says : "The arbitrators are directed to choose an umpire."   An umpire is a person, whom two or more arbitrators under authority of the parties to the submission select. His function is to decide the controversy, which the arbitrators

have been unable to decide. He is not to act in conjunction with them, but as a substitute for them. He is, as it were, a sole arbitrator, with the same duty of hearing the whole case *de novo*, as would have devolved upon him, had he been originally appointed alone. (Morse on Arb., 241; *Barrett's Adm'r* v. *Cunningham's Adm'r*, 9 Grat. 684.) Where a submission is made of all matters in difference between two parties in a particular suit then pending to two persons *and such umpire as they shall choose*, and *their* award to be made the judgment of the court, and the arbitrators and umpire *act together* and make a *joint* award, such award will be good. Although the award does not state that the third person, who signed the award, had been chosen by the arbitrators as *umpire*, yet that fact may be proved by other evidence. If the third party, who signed the award, was a mere *stranger*, this would not vitiate the award. (*Rison* v. *Berry*, 4 Rand. 275.) The submission evidently intended no more than that *in case of disagreement* the arbitrators "were authorized and directed to choose an umpire." They might, if they had chosen to do so, have selected the umpire, before they heard the case, and let him sit with them and hear the evidence, so that in case of disagreement between the arbitrators he could at once proceed to decide the case; and generally this would be the best course to pursue, as in case of disagreement, if an umpire were then first appointed, he would have to hear the evidence. But it was not sufficient certainly to set aside the award, that the umpire was not appointed, when there was no necessity for his appointment—as there was no disagreement between the arbitrators.

It is also insisted that the award was made, after the arbitrators were *functus officio*, they having made and published an award under the submission. It seems to us a fact established, that there was an award made on May 18, 1882, regularly signed by the arbitrators, and the original handed to one of the parties.

In *Mathews* v. *Miller & Quarrier*, 25 W. Va., it was held, that a statutory award must be regarded as complete, when it is signed and published and ready to be returned to court.

Mr. Robinson in his Practice, Vol. 6, 468, says: "When an award is once made, the arbitrator's authority is spent, and

he is *functus officio*. Thereafter there can be no new and distinct act of judgment formed by him, nor any effectual alteration of the award, but it may have effect as it originally was." He cites, *Hereford* v. *Brunley*, 6 East 311 ; *Irwin* v. *Elnon*, 8 East 54 ; *French* v. *Patton*, 9 East 355 ; *Bayne* v. *Morris*, 1 Wall. 97.

In 6 East 311 it was held, that after an award made under the hand of an umpire and ready for delivery pursuant to the terms of reference, of which notice was given to the parties, an alteration by the umpire of the sum awarded, though made on the same day and before delivery of the award, is void, but the award is good for the original sum awarded, which was still legible, the same as if said alteration had been made by a mere stranger without the privity or consent of the party interested. The authorities cited all sustain the position, that when an award is completed ready for delivery, the power of the arbitrators over it is gone.

So in this case, when the first award was made and signed and notice given to the parties, that it was so made, the arbitrators had nothing more to do with it except to return it to court. The award then made might have been entered up as the judgment of the court, as we have seen. The award that was entered up was more favorable to the party complaining here than the original one ; and he is not therefore prejudiced by the alteration. The plaintiff in error complains of the misconduct of the arbitrators. He is the last man who can be heard to complain of such misconduct, as it was all at his instance and in his favor. He went to the arbitrator Dent with a plat and tried to convince him and succeeded, that injustice had been done him by the award, as they had given Rogers more land than he claimed. Yielding to the influence of the plaintiff in error they changed the award and made the second award.

It is also assigned as error, that the award is uncertain, and therefore void. Kent, C. J., said : " It ought to appear from the context of the award or from the nature of the thing awarded or by a manifest reference to something connected with it, what things the parties are ordered to do." (Morse on Arb. and Aw. 409 ; *Schuyler* v. *Van Der Vier*, 2 Com. 235.) Technical precision and certainty are never necessary in an award. If it be expressed in such language, that plain

men acquainted with the subject-matter can understand it, that is enough. (Morse on Arb. and Aw. 408; *Butler* v. *Mayor, &c.*, 1 Hill 489.) Morse in his work on Arbitration and Award 408, correctly lays down the rule as follows : "An essential characteristic of an award is certainty. It is not necessary, that it should be written with such technical, and critical nicety that subtle examinations and forced constructions can not discover a doubt or a deficiency or a double meaning in any part of it. But it must have such a degree of fullness and precision, that no reasonable doubt as to the meaning and intention of the arbitrators can be entertained by intelligent men acquainted with the subject-matter." And again on page 409 : "The effect of the existence of uncertainty in an award is necessarily to avoid it. In fact it renders that, which purports to be an award, no award at all. For an award is a final and conclusive determination of certain matters; an instrument, of which the force, meaning or operation are left uncertain, is not such a determination and therefore is not properly speaking an award at all."

These rules are undoubtedly correct, for the object of arbitration is to settle disputes not to foster them. If the matter by the so-called award is left just as uncertain as before, the arbitration has not only failed in its purpose but has produced trouble and costs without any beneficial results. An award of commissioners appointed to determine the rights of claimants of land under a patent ordered, that certain of the parties should hold certain of the land " according to their respective possession forever." It was held that the award was in this respect " certain to a common intent." There could be no doubt that the commissioners meant the "actual possessions" of those parties. " An actual possession, *quasi pedis possessio*, is susceptible of clear and definite proof; and no land can be conveyed by any possible mode of expression dispensing with the necessity of parol proof to locate it. This description would be sufficient in a deed, and we can not require more certainty of description in an award than what the law requires in describing land conveyed by deed." (Morse on Arb.; *Jackson* v. *Ambler*, 14 Johns. 108, Spencer, J.; *Warren* v. *Lyons*, 7 W. Va. 474.) In *Jackson* v. *Ambler*, 14 Johns. it appears that in one portion of the award the arbitrators

determined a location by corners and lines. It was argued, that two of these lines were uncertain; but apparently no evidence was introduced to establish this fact; and the court said: "This we can not say; for aught that appears both lines may be as well known, and as perfectly certain as any lines ever run. There may be marked lines at every rod's distance by the most durable monuments. It ought to have appeared affirmatively, that there were no such lines, or that they were indefinite and vague."

The original award in the case before us said: "That the true lines between said lands in dispute, are a part of a 400 pole line of said Samuel Corrothers' survey, which begins where once stood a red oak corner, now gone, and ends at dogwood pointers; second, a part of a 260 pole line of same survey which begins at a double poplar corner to Samuel Corrothers and ends at said red oak corner. And we further award that the point where said red oak stood is and shall remain a corner between said lands, and that the same is and shall remain situated exactly 400 poles from said dogwood pointers and 260 poles from said double poplar corner. And we further award, that in locating said point said parties shall be governed by the corners of Samuel Corrothers' title papers, corrected, so as to locate said corner at the point aforesaid, exactly in a straight line 400 poles from said dogwood pointers and 260 poles from said double poplar corner, and said lines shall not be varied from a direct or straight course from said corners to the angle or point aforesaid by reason of any marked trees, that may be found along or in the vicinity of said lines." The submission, which may be looked to, shows where the lands are situated, on the waters of White Day creek in Taylor county. The land which Rogers claims was formerly known as the "Matthews tract." The Corrother's land was purchased of Andrew Corrothers, and by him from Thomas Haymond. The object of the submission was to settle the boundaries, and a consequent dispute as to the true division lines between the two tracts of land. If the true corner where the red-oak stood could be located, the matter was settled. This corner the arbitrators located. They took two points, which we must regard as settled and well understood between the parties, because if there was

any uncertainty about these points, it was the duty of Samuel Corrothers in resisting the entering up of judgment on the award to have shown such to be the fact. The two points, are "the dogwood pointers," in the 400 pole line, and the "double poplar corner" in the 260 pole line, with these two points settled, and obeying the directions given in the award, any competent surveyor could not fail to locate the red-oak corner as established by the award of the arbitrators. . It must be on a straight line, exactly 400 poles from the dogwood pointers, and exactly 260 poles in a straight line from the double poplar corner," and following the directions of the award the point where these straight lines projected would cross each other, is where the corner is established. Or to to speak as a mathematician would, according to the award, the red-oak corner would be found by describing a circle with the "dogwood pointers" as a center, having a radius of 400 poles, and by describind another circle with the "double poplar" corner as a center, having a radius of 260 poles, and the point, where these circles intersect, must be the location of the red-oak corner, as established by the award. For it is certain that the intersection of these circles will be 400 poles from the dogwood pointer and 260 poles from the double poplar corner; and no other point could be found, which would be at these distances respectively from these known points, in the direction indicated by the award. The award is therefore certain.

It was the second award, made after the authority of the arbitrators had ceased, which was in fact entered up as the judgment of the court, but as the awards are alike in all essential particulars save one, that in a certain contingency the plaintiffs in the court below should be restricted to their claims, and as this was put into the paper, and returned to court as the award, and as that paper is more favorable to Corrothers, the plaintiff in error, than the true award, which might have been entered up as the judgment of the court, he is not prejudiced and has no right to complain of the judgment.

It is claimed that it was error to give costs to Cochran. The judgment says Cochran was an umpire. If he was, then it was proper, that he should have costs. There was nothing in the record to show, that the arbitrators did not

choose an umpire, and that he did not sit in the case. It would, as we have seen, have been proper for him to sit with the arbitrators; but it would be more regular for him not to join in the award, unless there was a disagreement, when it would have been proper for him to have made the award himself.

There is no error in the judgment of the circuit court of Taylor county to the prejudice of plaintiff in error, and it is affirmed.

AFFIRMED.