## The inhabitants of NORTH YARMOUTH vs. The inhabitants of CUMBERLAND.

An award of arbitrators at common law, is not examinable, except on the ground of corruption, gross partiality, or evident excess of power.

Awards of referees, appointed under the statute, or under a rule of court, are open to other objections, such as mistakes of law, or fact, and the like ; for which the court to which the award is returned, will either reject or recommit it, at discretion.

Where, upon a division of the town of N. and the incorporation of a part into the new town of C., commissioners were appointed by the act of separation, with power to consider its terms and conditions, and award what sum of money one town should pay to the other in order to do justice between them ; and an action of the case was given to recover the sum thus awarded ;—it was *held* that this award was not examinable for excess of power, nor for mistake either of law or fact.

THIS action was *assumpsit*, brought by the town of *North Yarmouth*, to recover 1975 dollars, awarded by commissioners appointed by the special statute of 1821, *ch.* 78, *sec.* 9, dividing that town, and incorporating the part set off into a new town by the name of *Cumberland*. See 4 *Greenl.* 459. The commissioners were empowered " to consider the terms and conditions of the act," and award what sum of money one town should pay to the other, " in order to do justice between them."

At the trial of this cause, before the Chief Justice, the defendants offered to prove, by the testimony of the commissioners themselves, that they had exceeded their jurisdiction in acting on matters not referred to them by the statute ; that is,—that as the basis of their decision they assumed the supposition that had the towns been separated ten years before, *North Yarmouth* would have paid 136 dollars per annum, on account of paupers, more than when united to *Cumberland* ; to meet which would require a fund of about $2266 ; and that *Cumberland* ought to pay *North Yarmouth* for the support of bridges 800 dollars ; making in all 3066 dollars : That they proceeded to allow *Cumberland* various sums for the balance of personal property belonging to the two towns : for the disadvantage

of the residence of part of its population on the islands ; and for the anticipated inconvenient operation of the new statute respecting paupers ; and awarded the difference between these sums, to *North Yarmouth* :—That before the making of this award the selectmen of the two towns had already divided the paupers then on expense, by *Cumberland* taking one third of them, estimated at the cost of their support ; to make up which proportion they included not only all who had a settlement in *Cumberland*, but four others chargeable to *North Yarmouth*, including one having no settlement in the State ; all of whom were still supported by *Cumberland* :—That the commissioners supposed these four as still charged upon and supported by *North Yarmouth*, with its other poor ; and calculated what this town would be obliged to pay, more than *Cumberland*, during the ten succeeding years, upon the assumption that these four paupers would still be supported by *North Yarmouth ;* and awarded against *Cumberland* accordingly :—That had they known these facts, it would have materially altered the result, in favor of *Cumberland* :—That the expense of supporting these four paupers was about 96 dollars per annum ; which sum *Cumberland* will annually be obliged to pay, more than it would have paid, upon the principle assumed by the commissioners, had no error been committed :—And that all questions respecting the terms and conditions mentioned in the second, third, fourth and sixth sections of the act, had been amicably adjusted by the two towns, prior to the hearing before the commissioners.

This evidence the Chief Justice rejected ; and a verdict was taken for the plaintiffs, subject to the opinion of the Court upon the admissibility of the testimony.

*N. Emery* and *Greenleaf,* for the defendants, argued in support of these positions.

1. The commissioners exceeded their jurisdiction. The statute had already fixed the proportions by which all the joint property should be divided, and the paupers supported by the two towns ; and they had divided them accordingly. It left nothing uncertain, except the accuracy of this rule of division, to be determined by the line of territory, as it might be changed within ninety days after the passage of the act, by the election reserved to persons adjoining the

line, to belong to either town they might prefer. In reference to this contingency, the commissioners were to consider only the terms and conditions mentioned in the act, not including any speculations upon the future, either in roads, bridges or paupers; and to correct any inequality in the proportions assumed in the statute, by the award of a sum of money. And this excess of jurisdiction was clearly examinable, even in an award of referees ;—*Morgan v. Mather*, 2 *Ves.* 15 ; *Sessions v. Fairfield*, 2 *Bay* 94 ; *Mulder v. Cravat*, *ib.* 370 ; *Towne v. Jaquith*, 6 *Mass.* 48 ; *Tudor v. Peck*, 4 *Mass.* 242 ; or of commissioners appointed by the legislature. *Jackson v. Ambler*, 14 *Johns.* 96.

2. If the agents of *Cumberland* assented to this assumption of power, it would not render their proceedings valid ; the agents not having been appointed for that purpose. Consent cannot confer jurisdiction. *Carrol v. Richardson*, 9 *Mass.* 331.

3. But if there was no such excess of jurisdiction, yet there was a gross mistake in fact, in charging *Cumberland* with a sum of money equal to the perpetual support of four paupers, whom she was actually maintaining. And mistake of fact is good ground to set aside an award, even at law. *Dublin School v. Paul*, 1 *Bin.* 59 ; *Pringle v. McClenachan*, 1 *Dal.* 486 ; *Sumpter v. Murrell*, 2 *Bay* 450 ; 1 *Dane's Abr.* 280, sec. 5 ; *Jones v. Boston Mill-Corp.* 6 *Pick.* 154. Lord *Thurlow* admitted such to be the law ; but said it ought to appear by the testimony of the arbitrators themselves ; as it does here. *Anderson v. Darcy*, 18 *Ves.* 447 ; *Caldw.* 490; *Davis v. Canal Comp.* 4 *Bin.* 296. Or, if this be a mixed error, both of law and fact, still either is sufficient to vacate the award. *Kent v. Elstob* 3 *East* 18; 2 *Com. Dig. Chancery*, 2 *K.* 2, 5 ; 1 *Vin. Abr. Arbitrement I.* a. 39 ; *Cornforth v. Geer*, 2 *Vern.* 705 ; *Caldw.* 64, 66 ; *Williams v. Craig*, 1 *Dal.* 315.

4. But the commissioners were not referees, because not appointed by the parties, but by the legislature, before the defendants had a being. Nor is their report to be taken as part of the act. For nothing can be so taken which has not gone through the forms of legislation. The legislature, by giving a remedy by action of the case upon the award, instead of directing a warrant of distress, has

North Yarmouth *v.* Cumberland.

plainly indicated its intention that the defendants should be admitted to any equitable and proper defence against the award.

*Longfellow* and *Deblois* for the plaintiffs.

MELLEN C. J. delivered the opinion of the Court at the ensuing *June* term in *Penobscot.*

The rejection of the evidence offered by the counsel for the defendants to prove that all questions respecting the terms and conditions mentioned in the second, third, fourth and sixth sections of the act incorporating the town of *Cumberland,* had been amicably arranged and adjusted to the mutual satisfaction of said towns, before the hearing was had before the committee, (as they are termed in the act,) seems scarcely to have been alluded to in the argument, or considered as of any importance. It can furnish no ground for disturbing the verdict. The admission of it could have had no bearing on the cause, the decision of which depends upon the construction of the *ninth* section and the proceedings which have been had under it. The proof offered as to the above mentioned arrangement was irrelevant ; for if the terms and conditions contained in the specified sections have not been complied with, the parties are bound to comply with them ; and legal principles will readily furnish proper remedies, if any delinquencies exist. The main, and in fact the only question in the case, demanding our attention, is whether the residue of the evidence offered was properly rejected. The award of the committee, on which the present action is founded, is alleged to be essentially wrong ; predicated on mistaken principles and erroneous views ; and that in forming it they have far exceeded their jurisdiction. The excluded proof was to support these objections. At the same time it is fairly and frankly acknowledged by the counsel, that the committee are not chargeable with fraud, partiality or misconduct, in any part of their proceedings. The interesting inquiry then is, whether the award is impeachable on the grounds and principles which have been stated ?

Submissions to referees and arbitrators are of several kinds, and in some respects they are subject to different laws and regulations,

in many stages of the proceedings. Under our statute, parties may submit a controversy by agreement, signed and acknowledged before a justice of the peace, and the report of the referees is to be returned to the next Court of Common Pleas, for acceptance. When, also, a cause is pending in that court, or in this, the parties may refer it; in which case the report is to be returned to the court in which the reference was entered, for acceptance. In both those cases the court are often called upon either to reject or re-commit the report, for reasons alleged. In what particular cases they ought to exercise this power, is frequently a litigated question. Newly discovered evidence may be a good reason for a re-commitment. So, a mistake as to notice of the time or place of hearing; and in many instances mistakes, in calculation or some other way, especially when made known to the court by the referees themselves, would be good reasons why a court should not accept a report. As to cases of fraud or partiality on the part of referees, it is very clear that, on proof of it to the satisfaction of the court, the report would at once be rejected. In those cases where the acceptance of the report is opposed on the ground of excess of jurisdiction, the court will so far examine into the merits of the case as to ascertain whether such is the fact; and if so found to be, the court will reject or recommit the report. In all the beforementioned instances, the proper course seems to be plain. But when the objection to the acceptance of a report is, that the referees have not decided the cause on proper principles, or on legal evidence, or according to law, nor done justice between the parties; courts have often pursued different courses, and sanctioned different rules of proceeding. In 1 *Burr.* 277, Lord *Mansfield* says that awards are not to be scanned with critical nicety, as they are made by judges of the parties' own choosing; they are to be construed liberally and favorably, so that they may take their effect, rather than be defeated. It is no objection to an award that it is against law. *Kyd* 185, 237, 238; *Sheppard v. Watrous,* 3 *Caines* 167. The case of *Kleine v. Catara,* 2 *Gall.* 61, was one in which the parties, under a rule of court, submitted the action and all demands to certain referees, whose report was attempted to be impeached as against law, and for some other reasons. Mr. Justice

4

*Story,* in giving his opinion, says, the clear result from all the authorities is, that the judgment of the referees is conclusive upon all matters of *fact* ; and he expresses a strong opinion that it is equally conclusive upon all matters of law ; and that " under a general submission, therefore, the arbitrators have rightfully a power to decide 'on the law and the fact ; and an error in either respect ought not to be the subject of complaint by either party ; for it is their own choice to be concluded by the judgment of the arbitrators." See also *Chase v. Wetmore,* 13 *East* 358 ; 1 *Vesey Jr.* 369 ; *Kyd* 341, and *Parsons v. Hall, ex'r.* 3 *Greenl.* 60. Many, if not most, of the principles above stated are applicable to those cases where the report is by law to be accepted by the court, and judgment thereon is to be rendered, before it becomes conclusive as to the rights of the parties. It is doubtful whether the courts of Massachusetts or of this State have ever extended the doctrine as to the conclusiveness of awards and reports, so far as it is laid down in *Kleine v. Catara* ; at least in practice ; and it may be a subject worthy of consideration whether it ought to be extended so far, especially in those cases where the report is made by referees and presented for acceptance to the court to which by law it is returnable. On these points, however, we need not give any opinion, and we do not mean to express any on this occasion. There is no question that in case of a submission of all demands, if a particular demand was not laid before the arbitrators, nor considered and acted upon by them, an action may be sustained upon it afterwards ; and should the submission be relied on by way of defence, the plaintiff, by a special replication, may avoid the plea. *Webster v. Lee,* 5 *Mass.* 334 ; *Hodges v. Hodges,* 9 *Mass.* 320 ; *Ravee v. Farmer* 4 *D. & E.* 146 ; *Bixby v. Whitney,* 5 *Greenl.* 192. And so also in case of such submission, if one of the parties exhibits a claim for allowance, and the arbitrators refuse to receive or consider it, such refusal is a good objection at law to the award, and may be shewn by way of impeachment of it. *Randall v. Randall,* 7 *East* 81. Submissions of causes to arbitrators, either by parol or in writing, are of a character different from those references which we have been considering. In these cases the parties, either by parol or by bond, bind themselves to abide by the

award when made and published; and when so made and publish-ed, if it is a good and valid award, it needs no judicial sanctions, but is in full force, and an action lies on the bond, or the award, to com-pel performance of it. Such are the usual submissions to arbitrators at common law, and such the mode of enforcing the award, where the submission is not made a rule of court before the trial, or by order of *nisi prius* after it had commenced; and by the statute of 9 and 10 of *Wm.* 3, *ch.* 15, *sec.* 1, persons having controversies may enjoy the same privilege before any action is commenced; and thereupon, on proper proof by affidavits, a rule of court is made that the parties shall submit to and be finally concluded by the award of the arbitrators. This statute, in its provisions, in some measure re-sembles ours respecting references before justices; except that the award is not enforced by judgment and execution, but by process of attachment against the delinquent, if found necessary. In *Morgan v. Mather,* 2 *Ves.* 15, Lord *Loughborough* lays it down as clear that corruption, misbehavior, or excess of power, are the only grounds of setting aside awards. In *Newland v. Douglas,* 2 *Johns.* 62, it was decided that proof of a mistake by arbitrators was not admissible in a court of law; it could be corrected in a court of Chancery only; and in *Barlow v. Todd,* 3 *Johns.* 363, the court say, " Arbitrators are judges chosen by the parties themselves; and their awards are not examinable in a court of law, unless the condition is to be made a rule of court; and then only for corruption, or gross partiality." As to these rules, the practice in New York is believed to be similar to the practice in England. According to the last decision, as we have no such practice in this State, an award of arbitrators is not examinable, except on the ground of corruption, or gross partiality. The cases cited by the counsel for the defendants to show that an award is void in whole or in part for excess of power, cannot, and seem not to be contested; and many of the others are cases of re-ference under rules of court, in virtue of which, reports are set aside on motion, or summarily enforced. As before stated, such is not our practice. In *Long v. Stanton,* 9 *Johns.* 38, which was cove-nant on bond conditioned for performance of an award, the submis-sion was general, including all demands in law and equity; parol

evidence was not admitted to limit the extent of the submission to certain facts. In *Wills v. Maccarmick*, 2 *Wils.* 148, it was decided that in an action of debt on an award, the corruption and partiality of the arbitrators could never constitute a defence at law ; and in *Braddick v. Thompson*, 8 *East* 344, the same principle was distinctly recognized and confirmed ; and the court declared that the only mode in which the defendant could avail himself of the objection to the award on the ground of corruption and partiality, was by applying to the equitable jurisdiction of the court for the purpose of setting aside the award. The case of *Jackson v. Ambler*, 14 *Johns.* 96, has some strong features resembling those in the case before us. By consent of parties interested, certain persons were appointed by the legislature to settle the boundaries of a large patent. The commissioners were not to submit their report to any tribunal for their sanction. They made their report ; and one objection made to its validity, in that trial, was, that in settling the boundary line, they had proceeded contrary to law. *Spencer J.* in delivering the opinion of the court says, " It is a novel objection that an award is against law, when it decides upon a complicated question of boundary, and when that very question was the principal matter submitted."—Again he says, " In deciding the questions raised, we ought to give a fair and liberal interpretation to the award of the commissioners ; we can take no notice of the original merits of the case ; these the parties have seen fit to submit to the commissioners. When an arbitrament takes place by the mere act of the parties, it cannot be made an objection to the award that it is against law,—much less can we do it when, to the act of the parties is superadded an act of the legislature." This objection to the award was overruled. See also *Cranston & al. ex'r v. Kenny*, 9 *Johns.* 212.

But without further consideration of the general principles of law applicable to awards and reports of referees, of a common and ordinary character, as reduced to practice in England, and in Massachusetts, and this State, and not meaning to place the decision of this cause upon those principles, it is perhaps of more importance to examine, with some particularity, the act of incorporation, and several

North Yarmouth v. Cumberland.

of its provisions. It is a matter of notoriety that when large towns are divided, numerous circumstances are to be taken into consideration, and numerous interests to be examined and secured; that divisions of towns are not made by the legislature, except on the application of some portion of the inhabitants; and that no measures are adopted for the purpose, till after due notice to the towns interested. As the legislature cannot be presumed to know any thing of those numerous interests which are to be affected by the division of one town into two, there must, from the nature of the thing, be a consultation among those who have such interests. Every town is supposed to have, and generally has, property to be apportioned and divided; and privileges and burdens to be regarded, and become the subjects of legislative provisions in an act dividing the town, and incorporating the new town. The object which the legislature has in view, in giving notice to a town when a petition is presented for its division, is that all interested may be heard, and that the act of incorporation, which is in contemplation, may contain all such provisions as are either agreed upon by those who are interested, or such as are acquiesced in, as the most conducive to the peace and convenience of the whole. All the sections of the act, excepting the ninth, seem to have been the effect of consultation, estimates and arrangements, while the subject was under the consideration of the legislature; and they are generally of the same character as those found in other acts dividing towns. Some are more and some are less particular. By those provisions, proportions of property on hand, and of monies assessed, or due, are settled, and a variety of arrangements are made, so far as known facts enabled the legislature, and those interested, to make them, fixing permanently the rights and liabilities of both towns respectively. All this is done without any aid from the ninth section; and that appears to have had a special and superadded office assigned to it. It is not pretended that it was designed, by any language used in this section, to repeal or disturb any of those provisions which are contained in the preceding sections. The inquiry then is, and it must be rationally answered, for what purpose was the ninth section enacted, and what powers were thereby given to the

committee therein appointed ?    Whatever those powers were, both
towns have assented to their exercise, and are subject to the decis-
ions of the committee as far, to say the least, as though they had been
expressly chosen by them ; for *North Yarmouth* is claiming a sum
of money as due upon their award ; and *Cumberland* has accepted
the act of incorporation, and is now enjoying the benefits of all the
special provisions, of a specific character, which the act contains.
This ninth section differs from all the preceding, inasmuch as it
does not profess to define, ·prescribe, establish or settle any thing ;
but presupposes that there were some things unsettled and undefined;
some contested claims not then capable of definition and settlement
by mere legislative enactment ; and for these reasons this section,
with its special provisions, was added, whereby a power was dele-
gated to three persons by name, to do and complete something,
connected with and growing out of the division of *North Yarmouth*,
which had not been done and completed by any or all of the prece-
ding eight sections.    This seems evidently, and is not denied to have
been, the object which the legislature had in view, in the appoint-
ment of the committee.    Not being then able to ascertain and de-
cide what sum, if any, either town ought to pay to the other, to do
justice to the injured town, by compensating for losses it might sus-
tain in consequence of the division, and therefore not being able to
insert the same definitively in the act itself, the legislature constitu-
ted the committee, and gave them their powers, for the express pur-
pose of ascertaining such sum, and reporting it to the indebted town.
As to such sum, the ninth section may be fairly viewed, at least in an
equitable consideration of the subject, as a species of provisional
legislation ; and the sum being ascertained in the mode prescribed,
and by the consent of both parties, there seems no solid objection,
why, in such equitable view, it should not be considered as binding
as though it had been named in the act itself ; though it is true that
in legal contemplation, such a provisional arrangement cannot be
considered in the light of legislation, in respect to the sum ascertain-
ed by the award in question.

The next question is, what power was given to the committee ?
The words are, " appointed and empowered to consider the terms

North Yarmouth v. Cumberland.

and conditions mentioned in this act, and to determine what sum of money, if any, shall be paid by either of said towns, to the other, in order to do justice between them." It is difficult to assign any good reason why the ninth section was added, if justice had been done by the provisions contained in the preceding sections; in fact, it seems to be an admission, by all concerned, that justice required some further investigation of facts, not embraced in the previous section, and an estimate of the consequences resulting from them, considered in an equitable point of view. It is contended by the counsel for the defendants, that the power of the committee ought to be considered as having relation merely to those changes which might take place in virtue of the provisions of the seventh section; that as by that section, the people adjoining the line of division as established by the first section, might, within the limited term of ninety days, by their election, essentially vary the ultimate line of division, and proportion of territory and property belonging to the towns respectively, justice would require that such changes, as to amount of territory and property, should be a fair basis on which the committee might and ought to award compensation, to be made by one town to the other. If their powers were intended to be thus restricted, why was not the language of the section confined to that subject? Instead of that, however, it is general, and has immediate relation to all the terms and conditions of the act. Why then should construction confine that language to one of those terms and conditions? The legislature proceeded on the ground that a division of property, rights and liabilities, in the proportion of one third to two thirds, was considered a fair one; yet it must have been in some degree conjectural; and might well be considered as a legitimate subject of revision by the committee, who were empowered to consider all the terms and conditions, so far as to enable them to do justice between the towns, by awarding the payment of a sum of money, by one to the other, though they had no authority to annul or change any of the provisions of the preceding sections; and it is not contended that they had such power. When an award is objected to, upon the principle of an excess of jurisdiction on the part of the arbitrators, such excess should manifestly appear from

facts, and not be a mere inference, drawn from language of doubtful construction, which has been employed in the grant of powers to the arbitrators; more especially in a case where the language is general, and the object in view is to grant powers wholly of an equitable character, to enable the arbitrators, under given circumstances, to do justice between the parties who have selected them as judges to accomplish so desirable an object. When such general language is used as that in the ninth section, it is not easy to perceive how the committee could exceed their authority, when acting with purity of heart, and honestly endeavouring to ascertain what was justice between the contending parties, and then in making an award for that sum, which they allowed, for the very purpose of doing that justice. The committee were clothed with the powers of a court of equity, under the limitations specified; they were constituted, according to the terms of the section in question, the exclusive and final judges, as to what amounted to justice between the two towns, as much as the commissioners in the case of *Jackson v. Ambler*, before mentioned, were as to settling the line of the patent. In the cases of *Harlow v. French*, 9 *Mass.* 192, and *Lambert & al. v. Carr & al., ib.* 185, the decisions of the committee on Eastern lands were adjudged to be conclusive as to the rights and boundaries of the lands of settlers; such committee having acted under resolves of the legislature. In the three cases last named, the doings of the committees were not required to be accepted and sanctioned by any superior power; and in the section we are examining, the award of the committee is not made subject to the examination and approval of any other tribunal or body; on the contrary, the provision is that if the town against which the award should be made, should not, after notice, within six months " pay the monies awarded, according to the tenor of such award," an action might be had therefor by the town in whose favor the award should be made. Instead of an action of debt brought on an award, as in common cases, or on the bond of submission, to enforce payment of the award, the act, in the case before us, provides for the recovery of the amount of the award by an action on the case. Now, could the legislature have intended that the town having claim to the sum awarded might,

North Yarmouth v. Cumberland.

as the act expresses it, " have an action of the case therefor in any court proper to try the same," and yet not have a right to maintain the action and recover judgment for the sum awarded ? Could they have intended that in such action the delinquent town should have a legal right to go into an examination of the original merits, and impeach the award on the ground of excess of authority in the committee, or for any of the other reasons disclosed in the report of the evidence ? Could they, after having prescribed the mode of trial by a committee, for ascertaining the amount to be paid by one town to the other, to do justice between them, have intended that this very question should be re-examined and finally decided by a judicial court and jury, contrary to the terms of the law and the agreement of the parties ? An affirmative reply to these questions would not only be disrespectful to the legislature, but an imputation upon them as men of understanding and fairness. In such circumstances as these, how can this court pronounce that the committee exceeded their powers ? and if they have not, what right have the defendants to examine the principles on which they formed their decision ? The objections to this course of proceeding are certainly stronger than in cases of common references or submissions. If there had been fraud and corruption in the committee, it might and would render the award a nullity ; for even a judgment of court may be impeached and the effect of it destroyed, in this manner.

As to the mistake which the defendants offered to prove to have been made by the committee, in relation to the four paupers, who had, before the time of trial, been assigned to *Cumberland*, and were then supported by that town, and were yet estimated in the computation of the committee, as though they were then supported by *North Yarmouth ;* and as to the alleged difference which this fact would have made in the result, in favor of *Cumberland*, had the committee then known those facts ; we would observe, in addition to the general answer which we have given to the objections urged against the ruling of the judge, excluding all the offered evidence, that the alleged mistake was not the mistake of the committee, but of the agent of *Cumberland*, whose duty it was to have disclosed to the committee the facts as to the assignment and situation of the

paupers in question, as well as all other facts essential in the defence, or so deemed to be. The town of *Cumberland* must not complain of their own omission and avail themselves of it, by calling it an error of the committee. An award is not to be impeached for alleged errors which would not have existed, had proper information been given to the committee by those now making the objection. Surely it would be no impeachment of a verdict as erroneous, that the party against whom it is returned neglected to offer proof to the jury of partial payment of the sum demanded, when the verdict was correct on the evidence before them.

It is not denied, by the counsel for the defendants, that some hundreds of dollars of the sum awarded may possibly be due ; yet on what principle can this be, if the committee's powers were not of the general and equitable kind which has been mentioned ? Still the award is contested. The control which this court has over the award, extends no further than the enforcement of the collection of the sum awarded ; we have no authority to pronounce it good in part and bad in part, for the reasons which have been fully given in the course of this opinion. Knowing, as we do, that this is a cause in which the parties have for several years felt a strong interest, and which has been a subject of critical and labored and persevering investigation, in different forms, both by the counsel and the court ; we have been led to a more particular and extensive discussion of its merits than might otherwise have been deemed necessary ; and we have all arrived satisfactorily to the conclusion, that the motion for a new trial cannot be sustained ; and accordingly we order

*Judgment on the verdict.*