TRÜESDALE *v.* STRAW.

In an action at law, a demurrer and a plea in bar cannot be joined in the same plea or brief statement.

An award, that T. "shall have the right of support for his building and the timbers thereof in a wall erected by S., separating the buildings of T. & S., in as full, ample, and secure a manner as they are now supported therein, for so long time as said wall shall be capable of furnishing said support, and not become ruinous and unsafe ; and that S. shall have the same right of support for her building and the timbers thereof in the wall of said T., in the manner they are now supported thereby, and for the same time," is not deficient for want of reasonable certainty.

Such an award is not objectionable, in that it does not require the parties to execute conveyances of the right of support.  If conveyances are necessary, they can be obtained by proceedings in equity as well as if they were specially required by the award.

A written submission of all matters of difference between T. and S., in respect to their adjoining lots and a building and partition wall thereon,— with authority to determine and fix the divisional line ; to determine under what restrictions, if any, the old wall shall be taken down and a new wall

erected; what shall be the rights of the parties respectively in the wall; and what shall be paid by either party to the other for the right of support therein,—authorizes a preliminary award determining the restrictions upon which the old wall shall be taken down and the new wall erected, and a subsequent award fixing the divisional line, the mutual right of support, and the sum to be paid by one party to the other.

Where referees, authorized to fix the line between adjoining land-owners, and determine what shall be their rights respectively in a partition wall to be erected, establish a line running longitudinally through the wall, the parties' rights, respectively, are thereby established to so much of the wall as stands upon their respective lands.

Upon the construction of a written submission and award, the question whether certain items awarded were outside the submission is a question of law.

A submission under which referees are empowered to determine under what restrictions an old partition wall may be taken down and a new wall erected, and to decide all matters of difference between the parties in respect to the lots, building, and wall, authorizes them to include in their award of damages items of expenditure other than those required to establish the right of mural support.

In an unrestricted submission to referees, the rules of evidence and the measure of damages are matters of law.

In a suit at law on an award, misconduct of the referees is not the subject of a plea.   It is a ground for applying to the court to set aside the award, by motion when the award is returnable to court, and by a bill in equity in other cases.

A written common law award, upon a written submission, cannot be disputed in an action upon it at law, or upon the arbitration bond, for any error or defect not apparent upon the record, that is to say, the submission and award.

Debt, upon an award.   The declaration alleged that the defendant executed her bond to the plaintiff, which contained a condition reciting that the parties are owners of adjoining lots on Elm street in Manchester; that the plaintiff has erected a new wall upon the east half of his lot, in which the defendant desires to insert timbers for a new building which she is about to erect, and have a right of support therein; that for the proper accommodation of said building it will become necessary to take down the wall now standing, and formerly constituting a part of the building which she has taken down; that the plaintiff desires to have his timbers inserted in the new wall which shall be erected by the defendant, and have a right of support therein, and that the parties have agreed to refer all matters of difference between them, in respect to said lots and said building and wall, to the award and determination of C., G., and B., who shall decide

where the line is between the lots, under what restrictions, if any, the old wall shall be taken down and the new wall erected, and where, what shall be the rights respectively in said walls, and what shall be paid by either to the other for the right of support.

The declaration also alleged, that, upon due notice and hearing of the parties, the referees made a preliminary award June 5, 1873, in which they provided for the taking down of the then existing wall, and the erection of another in its place ; that before proceeding with the work, the defendant should support the timbers in the plaintiff's building in such manner that the wall might be safely taken down ; that she should protect the plaintiff's rooms in his building from the weather ; that she should support the timbers of the plaintiff's building in the new wall, in the same manner and as securely and firmly as they now are (and they made various other provisions not necessary to be recited) ; and awarded that, at the conclusion of the work, the parties respectively should be held to pay such sum to the other as the referees might determine, upon consideration of the whole case.

The declaration also alleged, that, after a subsequent hearing, the referees made a further award, in which they recited that the old wall having been taken down, and the new wall erected in the manner by them prescribed, and the parties having again been heard, they have further determined and awarded,—

" 1. [Defining and establishing the line between the lots of the parties.]

" 2. That the said Truesdale shall have the right of support for his building, and the timbers thereof, in said wall, so erected by said Straw between the buildings of said Straw and Truesdale, in as full and ample and secure a manner as they now are supported therein, for so long a time as said wall shall be capable of furnishing said support, and not become ruinous and unsafe.

" 3. That the said Straw shall have the same right of support for her building, and the timbers thereof, in the wall of said Truesdale, in the manner they are now supported thereby, and for the same time. And

" 4. That said Straw shall pay to the said Truesdale the sum of twelve hundred and twenty-six dollars and three cents, in addition to what she has already expended in putting said Truesdale's building into repair, and shall have no charge against him by reason thereof."

The declaration also alleged, that the award was duly published and delivered in writing to the parties, whereby an action has accrued to the plaintiff to recover said sum of $1,226.03, &c.

The defendant pleaded the general issue, with a brief statement, as follows :

" I. Said supposed award is invalid, because the referees failed to award upon all the matters submitted, in such form and manner as to make the award valid and binding upon the parties, in the following particulars : 1. The award does not determine, with sufficient legal certainty, either the extent or duration of the right of support which

the said Straw should have in the wall of the said Truesdale. 2. Because the said referees did not award and require the execution of any papers or instruments by which the right of support of the said Straw, whatever it was, would be effectually or sufficiently secured to her. 3. Because, while by the award two and one fourth inches of the new wall erected by Mrs. Straw would be upon land of said Truesdale, the referees have wholly failed to determine what shall be the rights of the parties (beyond the right of support) in that portion of the wall. The defendant will show that the whole of the new wall, for the first forty feet back from Elm street, was erected by her ; but that a considerable portion of the brick which were put into it came from a former wall, the upper portion of which was built by the plaintiff's grantor, with the consent of the then owner of the lot now owned by the defendant and referred to in the submission ; and that, under the facts connected with the building, the ownership of the two and one fourth inches of wall before mentioned would be a matter of great uncertainty, and should have been determined by said referees under the submission.

" II. Said supposed award is wholly invalid, because the said sum was, in fact, made up principally of items and claims wholly outside of the submission, and which the referees had no authority to allow or pass upon, and because the following items of claim outside of the submission were allowed by the referees, and included in the said sum of $1,226.03, to wit,   *   *   * =$1,069.03, neither of which items was for any right of support, and all of which wholly accrued subsequent to the submission, and subsequent to the so-called preliminary award of June 5, 1875.

" III. The said so-called preliminary award of June 5, 1875, in manner and form as made, was not authorized by the submission nor acceded to by the defendant.

" IV. Said referees, on or about June 8, 1875, while the submission was still pending, and again on or about September 4, 1875, after the evidence and arguments of the parties and their counsel had been closed and the cause submitted, without the knowledge or consent of the defendant, and without notice to her, and in her absence, made important surveys and admeasurements, by themselves and by an engineer employed by them, for the purpose of determining where the line was between the said parties, and what credit and right they should give to the testimony which had been laid before them, and which surveys and admeasurements were not merely or principally to enable the referees to describe the line which they might determine upon, but to enable them to decide where the line should be. Said surveys and admeasurements were not only of the buildings owned by the parties, but from other distant, uncertain, and unreliable points in the city to said buildings, or some points of them, and were in themselves incorrect. And said referees, also during said unauthorized admeasurements and surveys, received and listened to material statements of said engineer in respect to previous surveys made by him affecting

said line.   And also during said admeasurements and surveys, and in the absence of said defendant and her counsel, Mr. Gay [one of the referees] made statements to the other two referees in respect to matters within his knowledge, materially affecting said line.   And also the defendant will show that said admeasurements were made after the chairman of the board had been fully informed that the defendant would not consent to the making of such admeasurements in her absence, and without notice to her to be present.   Said admeasurements were also made by said referees,—and by reason of the same, said two and one fourth inches of land was taken from the defendant by said award, after the plaintiff's counsel, in his presence, had distinctly admitted, in effect, that the wall was wholly built upon the defendant's land.   By all of which misdoings, and the partiality of said referees, the defendant was injured, and said award, by reason thereof, is not binding upon her."

The court, *pro forma*, granted the plaintiff's motion to reject the brief statement, and the defendant excepted.

*Cross & Burnham* and *A. W. Sawyer*, for the plaintiff.

*J. B. Clark* and *C. R. Morrison*, for the defendant.

FOSTER, J.   The form of pleading adopted by the defendant in this case is peculiar, and not recognized by common or statute law.   To the general issue is annexed what is denominated a brief statement, which incorporates a demurrer to some points of the award, and a plea in bar as to others.   The first and second subdivisions of Part I, and the entire Third Part of the brief statement, so called, constitute a demurrer to the declaration, while the remainder of the pleading incorporates allegations of certain facts not stated in the declaration, and which are claimed to be a bar to the action.   A defendant cannot thus join with the general issue a demurrer and the subject-matter of a special plea, for which, in our practice, a brief statement (which is always a statement of fact, and not of law) is substituted.   To permit such joinder would give him what has always been regarded an unfair advantage over his adversary ; unfair in this, that he avoids the risk of paying the costs of a demurrer which may be overruled, and, after engaging the plaintiff in a contest on a demurrer, in which the latter may prevail, turns him round, without costs, to another controversy on the facts.   If this brief statement is allowed, a demurrer may be tried by jury.   It was properly rejected.

But since the defendant may hereafter be permitted to correct her pleadings by omitting the objectionable parts, and as the case has been argued upon all the aspects presented by the combined forms of pleading, it is deemed expedient to consider the whole case, and all the defences at the present time.

The first point of demurrer is, that the award set out in the declaration does not determine with sufficient legal certainty the extent

and duration of the right of support which the defendant should have in the wall of the plaintiff. It is not probable that if, instead of a submission to referees, the parties had, by mutual contract or by deed, undertaken to express their several rights of support, they would, or could, have used a more certain and definite form of expression than that supplied by the award. A limitation of time by years would have excluded the elements of usefulness and safety which the award incorporates. It might be impracticable to give the infinite details of the position, shape, and size of the plank, timber, brick, apertures, projections, &c., that go to make up the existing relations of the wall and building. The certainty required in an award is a reasonable certainty, having reference to the subject-matter, the nature of the thing to be done, the use to be made, or the right to be enjoyed. Caldwell Arb. 109. The law does not imply such certainty in an award as will render controversy impossible : it implies an intention of the parties that the award shall be reasonably certain, considering the subject-matter ; and this reasonable certainty may be defined by reference to an existing state of things, such as the fixed and established state and relation of the wall, and the building and timbers at the date of the award. Such reference is very commonly found in deeds and other written contracts, and if reasonably certain in such legal documents, it would seem to be reasonably certain in an award, which is the expression by referees of an agreement. If the award had required " a reasonable support," more controversy might have arisen over the question, What is reasonable ? than can arise concerning the state of the wall at the date of the award. It is objected, that " for so long a time as said wall shall be capable of furnishing said support, and not become ruinous and unsafe," leaves it uncertain whether the duration of capacity for support, or the duration of safety, is the test ; but the manifestly correct construction of the award is, the duration of capacity for safe support. It is also objected, that it is uncertain which wall it is, the continued capacity of which for safe support is the test of the duration of the defendant's right. But her right is " for the same time," that is, during the continued capacity for safe support of the plaintiff's wall, in which she has the right of support. In short, none of the defendant's objections seem to us to indicate an unreasonable uncertainty, regard being had to the objects which the parties desired to accomplish. That the award might have been made more certain, is no ground for vacating it.

Why is it said that an award must be certain ? Because, although the submission does not expressly require certainty, the law implies that the parties understand and intend and contract for certainty. But what degree of certainty ? A reasonable degree. And what is a reasonable degree ? Not such a high degree as would conflict with the intention which requires certainty. To establish an absolute term of years might be to fix a period of time too long or too short for some of the chief purposes and intentions of the parties in regard to the use to be made of the wall, and so defeat the intention, and over-

throw the purpose and foundation of the arbitration. No form of award has been suggested, and none occurs to us, that would be more likely to effectuate the intentions of the parties in regard to reasonable certainty of the extent and duration of support.

The second point of demurrer is, that the award does not require the parties to execute conveyances of the right of support. To this objection it may be answered,—(1) Although, doubtless, the referees were authorized, they were not required by the submission to award the execution of conveyances. (2) If conveyances are necessary, they can be obtained now by proceedings in equity, as well as if specially required by the award. The rights of the parties are established in writing, by persons duly authorized in writing. The rights and titles in real estate are, as they may be, absolutely fixed by an award. *Furber* v. *Chamberlain*, 29 N. H. 417; *Girdler* v. *Carter*, 47 N. H. 305, 308. If the absence of a recorded deed is a practical injury or danger to either party, there is abundant remedy in equity, and there would be no other remedy removing the injury or danger, if the award had required the parties to execute conveyances. An action on the bond might give compensation, but it could not compel specific performance. (3) If the award is such that conveyances are necessary for the enjoyment of the rights established by it, the settled rule of construction, that requires every reasonable intendment to be made in favor of the award, supplies the requirement of conveyances.

The third point of demurrer is, that the preliminary award was not authorized by the submission, nor acceded to by the defendant. The submission was of much more than the obligation of paying certain sums of money. It sets out with great particularity the purposes and desires of the parties with regard to their contemplated right of mural support, and refers all matters of difference between them in respect to the adjoining lots, buildings, and wall. The referees were to establish the line ; determine under what restrictions, if any, the old wall should be taken down and the new wall erected, and where; what should be the rights of the parties respectively in the walls ; and what should be paid by either to the other for the right of support. And the condition of the bond in suit was, that the defendant should perform the " awards" of the referees, and pay all such sums and do all other acts and things as the referees should award. It is suggested by the defendant, in argument, that in the bond itself the term award is not expressed in the plural number, and that in this respect the case is erroneously printed ; and that " the referees had no authority to make an award by piecemeal." But we are of the opinion that the submission is broad enough to include the authority to make an award from time to time, in the progress of the determination of the matters submitted, and that the preliminary and subsequent award, each after due notice to the parties and full opportunity to be heard, was a proper mode of execution of the authority conferred. If the referees had undertaken to make but one award, and to direct how the work should be done, and to prophesy, instead of determining subsequently,

the consequences and the damages to be done the plaintiff, the defendant might have had cause of complaint. It was manifest to the referees that the damages would be much more capable of determination after they were done, than by any previous calculation concerning them. The restrictions authorized by the submission seem to have been fairly and judiciously imposed, and it is not apparent to us how they could have been improved for the purposes of justice and a wise execution of the submission. They were authorized, they were reasonably certain and final, they conformed to the duty of the referees, and the subsequent award of damages was within the legal construction, the authority, and the fair contemplation of the submission. It is therefore immaterial whether the defendant acceded to the method of executing the authority conferred. But it does not appear that any objection was made before the arbitrators to their making a preliminary award, or to the subsequent hearing and making of the final award. The defendant, in fact, accepted the preliminary award by undertaking to perform the conditions imposed in it, in taking down her building and constructing the new one. The three points of demurrer set forth in the brief statement are overruled.

We now come to the three matters of fact alleged in bar. 1. It is alleged that 2¼ inches of the new wall erected by the defendant is on the plaintiff's side of the line established by the award; that the award does not determine the rights of the parties in that part of the wall, the right of support excepted; that for that reason, and because of the confused origin, history, and title of a considerable portion of the bricks of which the wall was made, and because of the facts connected with the building, the ownership of the 2¼ inches of wall is uncertain. A part of this allegation is fatally defective, in this: It is not alleged that confusion of title, arising from the origin and history of the bricks, was brought to the notice of the referees. It should be alleged what the matter of difference was, and that the referees were informed of it. Requiring them to settle a matter of difference, of which they were not informed by the submission or by the parties, would enable every party to avoid an award upon all matters in difference, by withholding information. But, as the case stands upon the record before us, if any part of the wall is on the plaintiff's land, that part of it is his. The boundary line established by the referees divides the land and the buildings, and the walls are parts of the buildings. Buildings and walls are part of the realty, divided by the fixed line. Aside from the subjection to rights of support, the walls are as absolutely divided, as to title, as any other parts of the buildings or lots; and there remains no uncertainty of right or title. *Strong* v. *Strong*, 9 Cush. 560, 564, 565, furnishes an analogy illustrating this part of the case.

2. The final award is, that the defendant pay the plaintiff $1,226.03, in addition to what she has already expended in putting the plaintiff's building in repair. In pleading, the defendant alleges that this sum was made up principally of items and claims wholly outside of the

submission, and then, in argument, she claims that this allegation is to be taken as true. If the question, whether the award of certain items was outside of the submission, were a question of fact, then, on the question of rejecting the brief statement, it would be taken as true that those items were outside of the submission. But being a question of the construction of a written submission, it is a question of law ; and that question the defendant proposes to try by jury, together with the three points of demurrer already considered,—a proposition not to be entertained. If the matter of these items is a defence at law, it can be introduced only by such an allegation of facts as will enable the court to see that, as matter of law, the allowance of certain damages was not authorized by the submission. No such facts being alleged, this part of the brief statement is fatally defective.

3. It is also alleged that items amounting to $1,069.03, were included in the larger sum, and that neither of these items was for any right of support, and all of them accrued after the submission, and after the preliminary award. Now, the submission not only authorizes the referees to determine what shall be paid for the right of support, but also to determine under what restrictions the old wall shall be taken down and the new wall erected, and to decide all matters of difference between the parties, in respect to the lots, building, and wall ; and the condition of the bond has reference to the performance of all the awards, or everything that may be awarded, and the payment of all sums required by the referees. How can it be claimed that the referees could award nothing except for the right of support ? Is it to be contended that the defendant might tear down her building and build another, tear down the wall and temporarily deprive the plaintiff's building of its former support, expose his building and the property therein to the weather and to demolition, and do him any amount of injury without compensation ? This part of the brief statement seems to be based on such a proposition, and it is fatally defective, because it does not state any facts showing that the items objected to were not proper items to be allowed, as some of the other sums in addition to payment for the right of support, authorized by the submission. The brief statement, to be good, must state facts upon which the court can see that, as matter of law, the award is void.

But there is another and an insuperable objection to this part of the brief statement. Not only were the referees authorized to require sums to be paid other than for support, not only was such authority absolutely necessary to accomplish the object the parties had in view, but, the submission containing no restriction binding the referees to decide the question of damages or any other question according to law, they were judges of the law as well as of the facts. The rules of evidence and the measure of damages are matters of law, and these matters were submitted to the referees. Whether on these matters the referees went beyond or kept within the rules of law, is immaterial. What particular items of damages should be allowed, was a question of law and of fact, upon which the parties have chosen their

own judges, by whose award they agreed to abide. *Johnson* v. *Noble*, 13 N. H. 286; *White Mts. Railroad* v. *Beane*, 39 N. H. 109; *Sanborn* v. *Murphy*, 50 N. H. 65, 69.

The fourth part of the brief statement, alleging misconduct of the arbitrators, imports a request that the court overturn a doctrine founded upon its own decisions from the earliest to the latest time. See *Page* v. *Pendergast*, 2 N. H. 233, 235; *Fletcher* v. *Hubbard*, 43 N. H. 58. Misconduct of arbitrators is not the subject of a plea, but only a ground to apply to the court to set aside an award. This may be done upon motion when the award is returnable to court, and upon a bill in equity in other cases. *Wills* v. *Maccarmick*, 2 Wils. 148; *Fletcher* v. *Hubbard*, before cited; *Elkins* v. *Page*, 45 N. H. 310.

The submission in this case was a contract, by which the parties chose their own judges, and submitted to them legal and equitable rights for decision, not controlling them by strict rules of law, nor requiring of them decisions in strict conformity with legal rules. The decision, if valid, is a judgment, or in the nature of a judicial decision, rendered by agreement of parties; and it is to be enforced as if the parties had agreed, without arbitration, that their rights are what the arbitrators have decided them to be. *Whitcher* v. *Whitcher*, 49 N. H. 176. The policy of the common law is strongly in favor of settlement by arbitration. *Johnson* v. *Noble*, before cited; *Piersons* v. *Hobbes*, 33 N. H. 27, 31. "Awards ought to be construed liberally and favorably." *Hawkins* v. *Colclough*, 1 Burr. 274; Kyd on Awards 242; *James* v. *Thurston*, 1 Cliff. 367; *Walker* v. *Merrill*, 13 Me. 173; *Spear* v. *Hooper*, 22 Pick. 144; *Rixford* v. *Nye*, 20 Vt. 132; *Schuyler* v. *Van Der Veer*, 2 Caines 235; *Jackson* v. *Ambler*, 14 Johns. 96. Every reasonable intendment shall be made to support an award; the intention of the parties and the arbitrators are the real objects to be considered. *Archer* v. *Williamson*, 2 Har. & Gill 62; *Skillings* v. *Coolidge*, 14 Mass. 43.

One hundred and twenty years ago, Lord MANSFIELD "declared against critical niceties in scanning awards made by judges of the parties' own choosing." *Hawkins* v. *Colclough*, before cited; *Gonsales* v. *Deavens*, 2 Yeates 539; *Burchell* v. *Marsh*, 17 How. 344, 349. The books are full of the rule, and its application to particular cases, that voluntary arbitration is held by the common law in high estimation, and that the regularity of the proceedings and the validity of the award are to be presumed. All these expressions probably mean no more nor less than this, that the submission and award are to be construed reasonably; the intention of the parties in the submission and of the arbitrators in the award are to be ascertained by fair and reasonable construction; and so far as the intention of the arbitrators carries out and accomplishes the intention of the parties, it is to be sustained, just as contracts in general are sustained. Undoubtedly, various courts in various times have practically applied constructions more or less strict to awards in particular cases; but the general rule,

requiring liberality in such construction, has prevailed, and has been increasingly favored.

If an award, then, is practically a judgment, it must have some of the substantial qualities and incidents of a judgment. And as, in a suit on a judgment rendered on a verdict, the defendant cannot, by any ingenuity in pleading, raise an issue upon which he can go to the jury on the questions decided by the judgment, or the general question of the validity of the judgment or the verdict; as he cannot, by any plea in such a suit, appeal from the judgment or verdict to the jury,—so he cannot do the same thing in a suit on an award, or (what is the same thing) in a suit on the submission bond for the enforcement of the award.

There are cases that look like exceptions to this general proposition; but the proposition is as elementary and indisputable as any rule of law. In a suit on a judgment, the defendant may plead " no such record." That plea raises an issue, not for the jury, but for the court. In a suit on an award, the defendant may plead " no such award ;" and when the submission and award are in writing, as in this case (the bond contains the submission), that plea, also, raises an issue, not for the jury, but for the court. The award not being a judgment of a court authorized to enforce its judgment by execution, the arbitrators do not issue an execution; but, in general, when, as in this case, the parties make the arbitrators their judges of the law, a written award upon a written submission is none the less, for practical purposes, a judgment on a verdict.

When by a submission under a rule of court arbitrators are made judges of the facts only, and not of the law, their award is a substitute for, and has as much effect as, the verdict of a jury. *Leonard* v. *W. R. R. Co.*, 113 Mass. 235. It is immaterial whether the tribunal is called a board of arbitrators or a jury, or whether their decision is called an award or a verdict. For the party claiming that the tribunal exceeded its jurisdiction, by considering and deciding questions not submitted, there is a legal method of raising his objection. If that method were a plea, presenting the issue to a jury, he could repeat it with reference to the last verdict, after a second or a third trial as well as after the first, and interminably, and prevent a judgment ever being rendered against him. When, as in this case, by a common law submission, arbitrators are made judges of the facts and the law, no formal judgment is rendered on their award. It is therefore itself treated as a judgment. It is rendered by a court of the parties' own choosing, and has generally been held in as high estimation, and considered to rest on grounds as stable, as a judgment of a court established by law. And the claim of excess of jurisdiction is available by the party who would insist upon such an objection. If the invalidity of the award appears in the record, it is, like any other judgment, void on its face : when offered in evidence, it is rejected. But as in a suit at law, on a judgment rendered on a verdict, it is not left to a second jury or a board of arbitrators to determine whether

the first jury considered matters not submitted, so, in a suit at law on a written award rendered on a written submission, it is not left to a second board of arbitrators or a jury to determine whether the first board of arbitrators considered matters not submitted. If it were otherwise, the end of litigation could be indefinitely postponed by pleading, in a suit at law on a judgment, that the jury or arbitrators included in their verdict matters not submitted to them, and by renewing the same issue as to every successive trial. The issue would be perpetual. It would be no more settled by the verdict or award of the last of a thousand consecutive appellate tribunals, trying its immediate predecessor, than by the first one appealed from. If there is a right of appeal from one jury or board of arbitrators to another jury or board of arbitrators, on the issue whether the first tribunal considered matters not submitted to it, there is a similar right of appeal on the question whether the tribunal deciding that issue committed a like error, and so on *ad infinitum.* If in this suit the defendant is entitled to plead that the arbitrators considered matters not submitted, to present that question to a jury, and to maintain her plea by extraneous evidence, then, if the verdict were in her favor, the plaintiff should be entitled to plead that the jury considered matters not submitted to them (to wit, the general merits of the arbitrated controversy), and to take the verdict of another jury on that question. The law, holding the award in as high estimation as the verdict, cannot consistently or justly give the defendant the remedy which it would refuse to give the plaintiff. The plaintiff's remedy in equity renders this branch of the law a just, rational, and methodical system.

The doctrine, that in a suit at law no extrinsic facts can be pleaded or given in evidence to defeat it, is supported by a great weight of authority. Judge STORY declares the doctrine in very broad terms : " It is well known that when a suit is brought at the common law upon an award, no extrinsic circumstances, or matter of fact *dehors* the award, can be pleaded or given in evidence to defeat it." 2 Story Eq. Jur., *s.* 1452, citing *Wills* v. *Maccarmick,* before cited ; Bac. Ab., Arb. & Aw., K.; *Braddick* v. *Thompson,* 8 East 344 ; *Underhill* v. *Van Cortlandt,* 2 Johns. Ch. 336, 357 ; S. C., 17 Johns. 405 ; Kyd on Awards (Am. ed., 1808) *c.* 7, *p.* 327 ;—see, also, *State* v. *Stewart,* 12 Gill & J. 456 ; *Tucker* v. *Page,* 69 Ill. 179 ; *Cobb* v. *Dortch,* 52 Ga. 548 ; *Barlow* v. *Todd,* 3 Johns. 367 ; *Day* v. *Hammond,* 57 N. Y. 479.

The principle of arbitration, as we have seen, has been favored by the law from the earliest times. It has been the policy of the law to establish this system upon a firm foundation, to give it permanence and solidity, and, so far as possible, invulnerability. Ages ago the doctrine was promulgated, which has been reiterated over and over again through all the intervening years down to the present day, that a written award, rendered upon a written submission, is final, as a judgment is final ; conclusive, as a judgment is conclusive ; can be attacked only as a judgment can be attacked, and defeated only as a

judgment can be defeated; and that, in a suit at law upon it, it cannot be impeached by matter extraneous. If there is any difference between an award and a judgment, the former holds the stronger position;—for it is laid down in all the authorities and traditions of the law, as we have seen, that arbitration is held by the law in high estimation; that the law regards it with a favorable eye; that every reasonable intendment is to be made in support of an award, not only because it tends to suppress and terminate litigation, but preëminently because such suppression and termination are accomplished, not through the medium of the courts and judges provided by the state as the tribunal to which its citizens, if they cannot agree otherwise, must appeal, and to whose decisions they must submit, reluctantly it may be, but because arbitration is constituted and awards are made by judges of the parties' own choice, outside of tribunals established by the legislature, and untrammelled by the forms and technicalities which control the regularly constituted tribunals.

Therefore it is that the books are full of such declarations as we have referred to, and many others of equal strength and clearness,—among them, *Newland* v. *Douglass*, 2 Johns. 62, in which the court, consisting of KENT, THOMPSON, SPENCER, VAN NESS, and YEATES, said that a suit at law will not lie to reëxamine the merits of an award; that a court of chancery may correct a palpable mistake or miscalculation made by the arbitrators, or relieve against their partiality or corruption,—but that there is no such remedy at law, in a submission not within the statute, that is, not made a rule of court, or not returnable to court, and therefore not open to correction on motion made to the court. To the same effect is *Elmendorf* v. *Harris*, 5 Wend. 516, 520.

In *Wills* v. *Maccarmick*, before cited, it is said,—"An award is a judgment by judges chosen by the parties themselves, and a jury in a special verdict cannot find any matter or fact *dehors* the award: by parity of reason, nothing *dehors* the award can be given to them in evidence." This was a declaration, a hundred and fifteen years ago, of the rule then firmly established in England.

English cases are relied on as supporting a contrary doctrine. One of these is *Mitchell* v. *Staveley*, 16 East 58, where the plea was, that the arbitrators did not consider certain matters within the submission. But the trial of the issue did not involve a new trial of the case presented to the arbitrators, and the construction of the submission and award was a matter determined by the court.

In the *Duke of Buccleuch* v. *The Commissioners*, L. R., 5 H. L. 418, the plea was that the umpire included, in a gross sum awarded as damages, items not submitted. A verdict was taken by consent for the plaintiff. The questions raised were, the construction of the submission, and the admissibility of the umpire's testimony as to the composition of the award; but no question was raised as to the validity of the plea, and the construction of the submission and award was determined by the court. No attempt was made to try anew the issues

tried by the referees, nor was the validity of the award, in any sense, directly or indirectly, left to the jury as a matter of fact for their determination.

Conceding these and other cases as authority, to a limited extent, for the defendant, there remains the great weight of authority against the general practice. Particular cases, presenting special questions of fact submitted to a jury, are not sufficient to warrant and establish a general rule, that, in a suit on a written award made on a written submission, the defendant may try by jury the question of excess of authority in the arbitrators. Such a rule, in cases like this, where the jury trial of that question would necessarily be a trial of the general merits of the arbitrated controversy, would be the abolition of that arbitration which the law regards with great favor.

In *Bean* v. *Farnam*, 6 Pick. 269, 273, the rule of the common law is recognized; but a necessity was found to exist in Massachusetts for its suspension, for want of adequate chancery powers. Thus it is said,—" But as our chancery powers do not authorize us to vacate or correct an award, there would be a failure of justice if the merits of an award might not in some cases be reëxamined. In cases, therefore, of the corruption of arbitrators, or where they exceed their authority, or there are gross errors and mistakes in the award, relief may be granted, under our system of jurisprudence, by allowing the defendant to plead the matter in an action on the award." This declaration of the Massachusetts court, and the practice in accordance with it, is a stronger authority for the rule than a multitude of cases following the rule. The Massachusetts judiciary, without a court of chancery authorized to vacate awards, feeling the imperative necessity of some remedy in cases of gross injustice, and finding it impossible to question or evade the settled rule of the common law, distinctly recognized in the case last named, boldly acknowledged it, and declared, with a spirit of enterprise equal to the emergency, that, as they had not the necessary chancery power to administer relief, and as there would be a failure of justice if awards could not sometimes be vacated, the courts of law must suspend the operation of an acknowledged rule. Whenever and wherever the reason for the suspension ceases, the suspension itself should cease, and the rule be reinstated, unless the suspension shall be found more salutary in practice than the operation of the rule.

The causes which compelled the suspension of the rule in Massachusetts apply, as they always have, in other jurisdictions equally deficient in chancery powers.

There are doubtless many decisions in our own state which seem to be in conflict with the doctrine of the common law, and which recognize the power of impeaching an award by plea and an issue to the jury; but they are all predicated upon the same considerations which compelled a suspension of the rule in Massachusetts, namely, the prevention of a failure of justice, in the absence of the requisite chancery power of vacating or correcting awards. Before the courts of New

Hampshire had acquired equity power to set aside awards for fraud or corruption of arbitrators, there was no remedy apparent for such an outrage, except by plea and jury-trial at law, as in Massachusetts. Of course, a remedy must be found and afforded to prevent a failure of justice, and that remedy here, as in Massachusetts, was provided (could be provided only) by a suspension of the ancient English rule : it was the resort of necessity.

The rule is not only declared, but the necessity for its suspension is clearly recognized in our earliest decisions. " Having no court of chancery, it is impossible that we should ever have adopted the doctrine that an award cannot be impeached in pleading, and avoided by matter *dehors*. I think we may safely lay it down as law, in this state, that an award may be impeached as well for corruption, partiality, misbehavior, &c., of the arbitrators, as for legal objections appearing on the face of the award. Whatever would be sufficient in England to set aside an award, either in a court of law, by motion in a summary way, or in a court of equity, by bill, or in this state, by way of objection to a report of referees, or to destroy an award when offered in evidence in an action on the original cause of action, may be pleaded in avoidance of the award, when the action is on the award itself, or on the bond of submission." SMITH, C. J., in *Knowlton* v. *Judkins*, Rockingham, Feb. Term, 1805. Smith's New Hampshire Reports 442, *n*. 1.

And the learned editor of those reports, in the same note, remarks,— " The reason for this doctrine was taken away by the statute of 1832, conferring equity powers upon the superior court; and it is now held that corruption, misconduct, or mistake of law, on the part of the arbitrators, cannot be pleaded at law by way of defence to the award, or to the submission bond. *Fletcher* v. *Hubbard*, 43 N. H. 58; *Elkins* v. *Page*, 45 N. H. 310."

We have been permitted to examine the case of *Morse* v. *Judkins*, in Chief-Justice SMITH's Manuscript Reports, *vol.* 6, *p.* 271, which shows the practice to have been conformable to the views stated in the note above cited. The action was debt on a bond, with condition to abide the award of arbitrators. In his plea, the defendant admits the award, but says it is not a valid or binding award, because there was collusion between the arbitrators and the plaintiff ; and the arbitrators were guilty of fraud, collusion, corruption, partiality, &c. The plaintiff, in his replication, traversed the collusion, corruption, partiality, &c., and issue was joined. The jury found a verdict in favor of the plaintiff ; and the court gave judgment in chancery for the sum awarded, with interest from the commencement of the suit.

To say there has not been in this state a greater judicial authority than Chief-Justice SMITH, is to speak with caution and moderation. In 1805, he and his associates recognized the want of chancery jurisdiction as the ground on which an award could be impeached in pleading, and avoided by matter *dehors,* in an action at law. We see no cause for overruling the reason of the law as thus laid down by this court seventy-two years ago.

Thus, in *Page* v. *Pendergast*, 2 N. H. 233, 234, WOODBURY, J., said,—" In actions on the promise to fulfil an award [made under a submission by the parties, not under a rule of court], or on the award itself, it would seem that in England the validity of the award itself cannot be attacked by matter *dehors* [citing *Wills* v. *Maccarmick*, and other cases]. The only redress for corruption, partiality, or mistake is in chancery. How far, in the absence of a court of chancery, we ought to admit such evidence to defeat an action on the promise or on the award, is questionable."

In *Adams* v. *Adams*, 8 N. H. 82, 90, RICHARDSON, C. J., said it would be strange if an award made under a rule of court could not be impeached by extrinsic evidence, " for there is no other mode, in this state, in which relief against an illegal and unjust award can be obtained."

In *Richardson* v. *Huggins*, 23 N. H. 106, which was debt upon an arbitration bond, the plea was *non est factum*, with a brief statement that the arbitrators had exceeded their authority. A verdict was taken by consent, subject to the opinion of the court. The court would not presume that claims not submitted were included in the award. On motion for a new trial, affidavits of arbitrators and others, as to the composition of the award, were taken and submitted to the court. The motion for a new trial was denied, and BELL, J., said,—" We do not feel called upon to question the correctness of the general principle laid down in *Adams* v. *Adams*, that the court will look only to the award itself for the means of rejecting a claim not submitted and improperly allowed." These citations are given, to show that, while some of the earlier cases in this state recognized a defence by plea and extrinsic evidence to an action at law on an award, such recognition was made with hesitation by the courts, and usually with the protest that no other remedy was available to prevent injustice. And it is noticeable, that in all the cases except *Thrasher* v. *Haines*, 2 N. H. 429, the question of the validity of the award was determined by the court and not by the jury. Since the chancery powers of the court have been recognized, and a remedy for an illegal award has been found in equity, the exception to the rule rejecting, in actions at law on awards, defences by plea and evidence *dehors* the award has passed out of practice here, and the rule itself prevails.

Our chancery jurisdiction over awards is derived from the construction of the language of the Revised Statutes, *c.* 171, *s.* 6, establishing a general chancery power. That construction was not adopted in the time of the earlier decisions. In 1853, it was first suggested (in a dictum of Judge BELL, in *Wells* v. *Pierce*, 27 N. H. 503, 512) that the Revised Statutes confer an equity jurisdiction " as broad as equity itself;" but not until 1857 (*Walker* v. *Cheever*, 35 N. H. 339) was it formally decided that this court has full chancery powers and general equity jurisdiction. In *Richardson* v. *Huggins* (1851) it was not recognized; and that case, although decided after the passage of the Revised Statutes, followed the old practice of regarding the

English rule as suspended from necessity, for the purposes of justice;—
but it is important to bear in mind that this was before the Revised
Statutes had received the construction intimated by Judge BELL in
1853, and deliberately adjudged by the court in 1857. Until it was
decided in 1857 that full chancery power existed, there was no occa-
sion to question the continued suspension of the rule.

In our later decisions the rule of the common law is distinctly
recognized. *Fletcher* v. *Hubbard*, 43 N. H. 58; *Elkins* v. *Page*, 45
N. H. 310 ; *Girdler* v. *Carter*, 47 N. H. 308.

In *Wells* v. *Pierce*, 27 N. H. 503, 513, the adoption of equitable
principles in proceedings at law, from necessity, in the absence of
equitable tribunals, is recognized : and reference is made to *Runlet* v.
*Otis*, 2 N. H. 167, for illustration, which case, it is said (BELL, J.),
" was decided while no court of equity existed in New Hampshire,
and while the courts were compelled to adopt equitable rules to pre-
vent injustice." And in *Ela* v. *Pennock*, 38 N. H. 154, 159, PERLEY,
C. J., says,—" Formerly the courts of this state had no general juris-
diction in equity; and, to prevent a failure of justice, there was nat-
urally a strong inclination to recognize equitable rights as far as pos-
sible in suits at law. There is no longer any reason for attempting
to afford in suits at law the redress which belongs appropriately to
the jurisdiction in equity." See, also, *Copp* v. *Henniker*, 55 N. H.
179, 211.

It seems to be a legitimate conclusion, then, that none of the New
Hampshire authorities are in conflict with the universally acknowl-
edged rule of the common law, that forbids a written award on a writ-
ten submission to be impeached in an action upon it by extraneous
evidence. If that rule is salutary and efficient for the purposes of
justice, it is reasonable that the suspension of the rule should cease
when the cessation of its cause—the want of adequate chancery pow-
ers—is recognized. It seems reasonable, safe, and sufficient for the
practical administration of justice, that the suspended rule should be
permitted to resume its beneficent sway. With unlimited chancery
powers, affording every species and extent of equitable relief, there
seems to be no reason why this court should recognize any exception
to the time-honored rule of the common law.

It seems to be the more consistent doctrine, that a written common
law award upon a written submission shall not be disputed, in an
action upon it, for any error or defect not apparent on the record,
that is to say, the submission and award ; and that the remedy is by
motion to the court, when the award is returnable to court, and upon
a bill in equity in other cases. Such is already the recognized rule in
relation to fraud, misconduct, and mistake *( Fletcher* v. *Hubbard* and
*Elkins* v. *Page*, before cited) ; and the recognition of the further and
the fullest application of the rule, as above stated, will manifestly pro-
mote convenience as well as symmetry in the administration of this
branch of the law, and will close the door upon appeals to a jury from
the judgment of arbitrators, with all the attendant inconvenience and

expense, in violation of the policy of the law and of the agreement of parties to abide by the decision of judges of their own choice. The defendant's exceptions are overruled.

*Case discharged.*

STANLEY, J., did not sit.