## STRAW v. TRUESDALE.

*Truesdale* v. *Straw*, 58 N. H. 213, 214, affirmed, as to the construction of a submission authorizing referees to make a preliminary award, and to give damages arising after the submission.

An honest and intelligent award, embracing only the matters submitted, is generally valid, notwithstanding errors and informalities consistent with the fairness of the trial.

It may be proper for referees, authorized to determine the location of a line, to go upon the premises and make measurements, in the absence and without the knowledge of the parties.

Material statements made to referees in regard to the case, in the absence of the parties, do not invalidate the award, when they do not cause, nor have any tendency to cause, any error in the award or any unfairness in the trial.

When the proceedings of referees are fair and equitable, their award is not invalidated by evidence that one of them acted upon his own knowledge of a material fact, and that his associates acted upon the same knowledge, communicated to them by him.

BILL IN EQUITY, to set aside an award, upon which was brought the suit at law, *Truesdale* v. *Straw*, 58 N. H. 207. The condition of the mutual bonds given by the parties to abide the award was as follows: "WHEREAS, the said parties are owners of adjoining lots on Elm street in Manchester, and the said Truesdale has already erected a new wall upon the east half of his lot, in which the said Straw desires to insert timbers for a new building which she is about to erect, and have a right of support therein. And the said Straw is about to erect a new building, for the proper accommodation of which it will become necessary to take down the wall [in which the timbers of the said Truesdale's building were inserted] now standing, and formerly constituting a part of the building which she has taken down. And the said Truesdale is desirous of having his timbers inserted in the new wall which shall be erected by her, and have a right of support therein. And the parties have agreed to refer all matters of difference between them in respect to said lots, and said building and walls, to the award and determination of * * * who shall decide where the line is between said lots, under what restrictions, if any, the old wall shall be taken down and the new wall shall be erected, and where; what shall be the rights respectively in said walls; and what shall be paid by either to the other for the right of support in said walls. Now if said Straw shall well and truly abide by and perform the award of the referees, and execute such papers and instruments, and pay all such sums, and do all other acts and things as said referees shall

award and determine, then this obligation shall be void. It is, however, agreed and made part of this bond and submission, that neither acknowledges any right or title of the other in any land or property connected with this submission, nor makes any admission as to lines." After hearing the parties,.the referees made the following preliminary award : " In the matter submitted to us by. John Truesdale and Hannah F. Straw, concerning the erection of a division wall between the said parties on their respective lots on Elm street in said Manchester, it is determined by us that in taking down the old wall now standing between the said parties, and before proceeding with the work, the said Hannah F. Straw shall thoroughly support the timbers in the building of said Truesdale in such a manner that the walls can be safely taken down; and that she shall thoroughly protect the rooms in said building of said Truesdale from the weather; that she shall support the timbers of the building of the said Truesdale, in the new wall to be erected, in the manner and as securely and firmly as they now are; provide the necessary flues and chimneys in the new wall for heating the rooms of the said Truesdale as conveniently and thoroughly as they now are, projecting said flues or chimneys into the rooms of said Truesdale equally and as far as they are projected into the rooms of said Straw, not exceeding, however, four inches, unless by consent of said Truesdale, and thoroughly repair all damage done to the rooms of said Truesdale by destruction of plastering or otherwise, and put them into as good a state of repair as they now are in, and make the roof of said building tight, and secure from the weather : all this to be done at her own expense. And it is further decided by us that if, in the process of the work, said Straw shall, through insufficient support or otherwise, do damage to the said building, she shall repair the same, and at the conclusion of the work the parties respectively shall then be held to pay such sum to the other as the referees may determine, upon consideration of the whole case : the new wall to be erected in the place of the old one, as near as may be : the work to be completed as soon as practicable,—the said Truesdale throwing no impediment in the way, but granting all convenient and necessary facilities."

For the purpose of locating the line and determining what weight should be given to the evidence introduced on that point, the referees went upon the premises with a surveyor, and, in the absence and without the knowledge of the plaintiff, made certain measurements and heard certain statements of the surveyor as to the true location of the line. One of the referees told the other referees, in consultation, that when he erected the defendant's building he found it hard to determine the line between the lots, and that two or three different engineers were employed, and no two of them agreed as to its true position. After the new south wall was completed, there was a final hearing before the referees, and both parties were present. Against the plaintiff's .objection, the surveyor

testified as to the measurements made as above stated.   The referees made a final award locating and establishing the line, and determining that each party should have a right of support in the wall of the other, and that the plaintiff should pay the defendant $1,226.03.   At the time of the submission, the plaintiff was not aware that the defendant intended to claim compensation for anything except the right of support.   The plaintiff asked that the award be set aside because the referees exceeded their authority in allowing claims for damage which arose after the submission, because of bias, partiality, and misconduct of the referees, and because the award was grossly unjust.   The court dismissed the bill, and the plaintiff excepted.

*Morrison* and *G. Y. Sawyer*, for the plaintiff.

*Cross* and *A. W. Sawyer*, for the defendant.

DOE, C. J.   The referees did not exceed their authority.   The award is warranted by the submission, and does not appear to be based on any error of law or fact.   For the protection of the defendant, the submission provided that the referees should determine the restrictions under which the plaintiff should take down and rebuild the partition wall, which was one side of the defendant's building.   The referees imposed several restrictions, one of which was, that the sum to be paid by either party to the other should be determined by the referees at the conclusion of the work. In putting under the control and regulation of the referees a future work likely to be injurious to the defendant, the submission contemplated future damage likely to be caused by that work, and a claim of compensation for such damage at the completion of the work.   The parties would naturally understand that such a claim would be adjusted, not by a lawsuit, but by the arbitration by which they agreed to avoid lawsuits about that work.   And if a stipulation to that effect was not directly established by the legal construction of the bonds, the bonds authorized the imposition of such a condition by the restrictive power committed to the referees. And if, by an incomplete use of that power, the referees could turn such a claim, or any part of it, over to a lawsuit, it was not their legal duty to thwart the parties in that way.   This part of the case is settled by the decision in the suit at law between the same parties.   58 N. H. 207, 213, 214.

At the time of the submission the plaintiff did not know that the defendant intended to make such a claim.   It was not then known that she would so take down the wall and build another as to do him any harm.   But if she understood that the submission empowered her to do the work so as to inflict upon him unlimited damage without due compensation, or excluded such compensation from the award, she entertained an unreasonable and erroneous

view of the written effort made by her and by him to secure the execution of the work without injustice and without litigation.

So far as the question of bias, partiality, and misconduct of the referees is a question of fact, it was tried at the trial term, and decided adversely to the plaintiff: and so far as it is a question of law, the plaintiff's allegation is not sustained. Neither by evidence of excessive damages given or other injustice done in the award, nor by any evidence, did the plaintiff prove this part of her complaint. Upon the order of the trial term dismissing the bill, the case is to be regarded in the law term as one in which, as a matter of fact, justice was done by referees, before whom the parties had a fair trial. An honest and intelligible award, embracing the matters submitted and nothing else, is generally sustained by the law, notwithstanding errors and informalities consistent with the fairness of the trial. *Beattie* v. *Hilliard*, 55 N. H. 428, 434. The just result of a fair trial before a tribunal voluntarily chosen by the parties, and by them authorized to finally decide the law and the facts of the case, is not annulled on technical grounds. The avoidance of technical objections is one of the objects of common-law arbitration.

In the absence and without the knowledge of the parties, the referees made, and caused to be made, on the ground, such measurements as they thought might give light on the disputed line and the weight of the evidence. In this there was no irregularity or impropriety. The referees' authority to determine the line and the whole case included authority to make measurements in the absence as well as in the presence of the parties, for the purpose of finding the line, marking it upon the ground, and testing the evidence, and to decide whether measurements made in the absence of the parties should be made known to them as a reason for a further hearing.

When certain measurements were made in the absence of the parties, the surveyor made material statements to the referees in regard to the true location of the line. It is not found that what the surveyor said was untrue, or caused or had any tendency to cause any error in the award. At a subsequent hearing the surveyor testified as to the measurements made by him under the direction of the referees, and the plaintiff had an opportunity to examine him, and to show by any evidence any error in his measurements, or in the statements made by him to the referees.

In the consultation of the referees, after the final hearing, one of them told the others what he knew about the line. This it was perfectly proper for him to do. A referee is frequently chosen by the parties because he is supposed to have some knowledge of the matter in controversy. One object of voluntary, common-law arbitration is a method of trial more liberal than that of court and jury. How much more liberal it shall be, is a question largely left to the discretion of the judges selected by the parties. When the trial

is fair in fact, the law does not overturn the award on the ground that a referee acted upon his own knowledge of a material fact, or that his associates acted upon the same knowledge communicated to them by him.   By universal practice and understanding in this state, the law of this point is as well settled as the rule that the referees are the judges of the admissibility and weight of evidence.

The plaintiff desires, by an amendment of the reserved case, to bring before us evidence that would raise no question of law.   The amendment should not be made.   The parties did not intend their arbitration should be defeated by an appeal from the referees to a jury, or to a court, on any question of law or fact submitted to the referees.   And on the material questions of fact raised by evidence in this suit, there is no appeal from the trial term to the law term.

*Exceptions overruled.*

STANLEY, J., did not sit: the others concurred.